**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Frederick J. Klorczyk III (State Bar No. 320783)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
          fklorczyk@bursor.com
          jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail:  scott@bursor.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK MUSGRAVE, DAVID KRAKAUER, JONATHAN RAISKIN, and ALEXIS SALVADORE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA, INC., HYUNDAI MOTOR COMPANY, KIA MOTORS AMERICA, INC., KIA MOTORS CORPORATION,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Rick Musgrave, David Krakauer, Jonathan Raiskin, and Alexis Salvadore ("Plaintiffs"), individually and on behalf of all others similarly situated, allege the following on the investigation of counsel and upon information and belief, except that Plaintiffs' allegations as to their own actions are based on personal knowledge.

## I.  NATURE OF THE ACTION

1.      Defendants Hyundai Motor America, Inc. ("HMA"), Hyundai Motor Company ("HMC") (collectively "Hyundai"), Kia Motors America, Inc. ("KMA"), and Kia Motors Corporation ("KMC") (collectively "Kia") (collectively "Defendants") are the manufacturers of vehicles sold under the Hyundai and Kia brands throughout the United States.  Defendants designed, manufactured, imported, distributed, marketed, and/or sold the Class Vehicles throughout the United States.  Defendants also provided – and continue to provide – service and maintenance for the Class Vehicles through their extensive network of authorized dealers and service providers nationwide.

2.      Defendants have wrongfully and intentionally concealed a Wiring Defect in certain Kia and Hyundai models[1] ("the Class Vehicles") which can cause electrical shortages that may result in a spontaneous fire during normal operation of the Class Vehicles.  As of June 11, 2018, the National Highway Traffic Safety Administration's ("NHTSA") Vehicle Owner Questionnaire database alone revealed that "at least 120 owners have reported that their 2011-14 Optima, Sorento, Sonata, or Santa Fe caught fire without a preceding collision.  There are also 229 separate complaints regarding melted wires in the engine bay, smoke, and burning odors, indicating potential fires."[2]  The vast majority of documented complaints discussing the origin of the issue note "that smoke and/or flames are first seen emanating from the engine bay, then the car is quickly engulfed."[3]

---

[1] Affected Hyundai models include all variants of the following: 2011-2014 Hyundai Santa Fe, 2011-14 Hyundai Santa Fe Sport, 2011-2014 Hyundai Sonata, and the 2011-2014 Hyundai Sonata Hybrid.  Affected Kia models include all variants of the following: 2011-2014 Kia Optima, the 2011-2014 Kia Sorento, and the 2010-2015 Kia Soul.
[2] *See* The Center for Auto Safety's June 11, 2018 Petition for Direct Investigation, at 1, *available at* https://www.autosafety.org/wp-content/uploads/2018/06/Center-for-Auto-Safety-Kia-Hyundai-Fire-Defect-Petition.pdf (last visited 12/2/18).
[3] *Id.*

3.     On June 11, 2018, the Center for Auto Safety ("CAS") filed a Petition for Defect Investigation with NHTSA because **"[t]he number and severity of these [fire] complaints [submitted to NHTSA], when people are simply driving their cars on the highway, is frightening**.  It is long past time for Kia and Hyundai to act.  Car fires put everyone on the road in significant danger."[4]  When the Class Vehicles "are compared to other similar vehicles, there is enough of a statistical disparity to suggest a systemic issue that NHTSA must investigate and seek a repair remedy as soon as possible."[5]  Based on the "frighteningly large number of [Class V]ehicles manufactured at the same time catching fire,"[6] CAS urged NHTSA to "initiate a safety defect investigation into the excessive number of non-collision related fires that the owners and operators of these vehicles suffer as compared to similar class and model year vehicles from other manufacturers."[7]

4.     On July 24, 2018, CAS issued an Addendum To Petition For Defect Investigation to include the 2010-2015 Kia Souls based on its finding that the "2010-2015 Souls are also catching fire at an alarming rate."  The Addendum described an incident wherein a Virginia man's Kia Soul caught fire while driving.  CAS noted that "Kia has not shown any willingness to take vehicle fires seriously."[8]

5.     In separate cases in Florida and Tennessee, drivers reported being trapped and fighting with doors that would not open as flames raced toward them from the engine.[9]  These Florida fires took place in approximately October and November of 2018.

6.     As a result of CAS' petition and consumer reports of fires, the Senate Committee on Commerce, Science, and Transportation sought to hold a hearing on November 14, 2018, entitled

---

[4] https://www.autosafety.org/center-for-auto-safety-demands-recall-of-2-9-million-2011-2014-kia-and-hyundai-vehicles-after-almost-one-non-collision-fire-report-every-day-for-four-months/ (last visited 11/16/18)
[5] Ex. A, at 2.
[6] *Id.* at 1.
[7] *Id.* at 1.
[8] https://www.autosafety.org/wp-content/uploads/2018/06/Center-for-Auto-Safety-Addendum-to-June-11-2018-petition-regarding-Kia-Hyundai-fires.pdf (last visited 12/2/18)
[9] https://www.abcactionnews.com/money/consumer/taking-action-for-you/number-of-kia-vehicles-catching-fire-continues-to-grow-causing-concern (last visited 11/18/18).

"Vehicle Fires: Examining an Ongoing Safety Issue."[10] "The hearing [was supposed to] focus on motor vehicle safety issues involving vehicle fires. It [was] also [supposed to] examine efforts to mitigate fires and promptly identify and respond to defects that may pose a fire risk."

7. Despite requests to testify before Congress, the CEOs for both Kia and Hyundai subsequently refused to attend the congressional hearing to explain why the Class Vehicles spontaneously burst into flames.[11] The hearing was ultimately placed on hold, to be scheduled at a later date.[12]

8. CAS's report led NHTSA to open an investigation in August of 2018. Between June 11, 2018 and October 12, 2018, CAS learned of at least 103 additional reports of fires in the Class Vehicles, nearly one report every day for four months (which represents an 85% increase of reported fires in the Class Vehicles). Twelve of the 103 additional reported fires occurred in Class Vehicles that were previously recalled by Defendants. As such, the Wiring Defect remains unaddressed and continues to pose serious safety risks to owners and occupants of the Class Vehicles.

9. Even though the Class Vehicles are marketed as safe for use, Defendants have actively concealed and failed to disclose the Wiring Defect to consumers, despite their knowledge that the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter, including during scheduled maintenance. Knowledge and information regarding the wiring defect was in the exclusive and superior possession of Defendants and their network of authorized dealers, and was not provided to Class Vehicle owners who could not have reasonably discovered the Wiring Defect through due diligence.

---

[10] *See* https://www.abcactionnews.com/money/consumer/taking-action-for-you/kia-hyundai-automakers-to-testify-before-congress-on-car-fires-after-i-team-investigation (last visited 11/16/18).
[11] https://www.wcpo.com/news/national/kia-hyundai-ceos-refuse-to-attend-senate-hearing-to-explain-cause-of-car-fires (last visited 12/2/18).
[12] https://www.reuters.com/article/us-usa-autos-safety/u-s-senate-hearing-over-hyundai-kia-engine-fires-on-hold-idUSKBN1ND2CK?feedType=RSS&feedName=businessNews (last visited 12/2/18).

10.     So far, whenever presented with a burned-out vehicle from which owners – and often small children – have barely escaped, both manufacturers have provided empty non-responses such as: "Kia Motors America (KMA) works directly with customers and if it is determined that a fire is the result of a manufacturing-related issue, KMA will work with customers to address any costs or expenses they may incur." Similarly, Hyundai has said "if NHTSA finds that additional remedies are warranted it will take action."[13]

11.     Defendants have not repaired the Wiring Defect, have not offered Class Vehicle owners a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Wiring Defect.  As a result, Defendants have wrongfully and intentionally transferred the cost of repair of the Wiring Defect to Plaintiffs and members of the Classes by fraudulently concealing the existence of the Wiring Defect.

12.     The Wiring Defect has forced owners of the Class Vehicles to incur out of pocket costs, inconvenience, and has placed them at constant risk of severe injury or death.  It has also diminished the value of the Class Vehicles.

13.     Defendants also breached their express and implied warranties through which they promised to, inter alia, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including the Wiring Defect.  Because the Wiring Defect was present at the time of sale, lease, or service of the Class Vehicles, Defendants are required to repair and/or replace the Class Vehicles pursuant to the terms of the warranties.

14.     Plaintiffs and Class members therefore assert claims against Defendants for fraud, negligent misrepresentation, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and unjust enrichment.  Plaintiffs also bring claims under consumer protection statutes of California, Florida, and New Jersey, including the California

---

[13] https://www.autosafety.org/center-for-auto-safety-demands-recall-of-2-9-million-2011-2014-kia-and-hyundai-vehicles-after-almost-one-non-collision-fire-report-every-day-for-four-months/ (last visited 11/16/18).

Consumers Legal Remedies Act, California Business & Professions Code § 1770(a), *et seq.*
("CLRA"), the California False Advertising Law, California Business & Professions Code §
17500, *et. seq.* ("FAL"), the Unfair Competition Law, California Business & Professions Code §
17200, the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*, and the Florida Deceptive
and Unfair Trade Practices Act ("FDUTPA"), § 501.201, *et seq.*

## II.  PARTIES

### A.    Plaintiffs

15.    Plaintiff Rick Musgrave is a citizen of the state of California and resides in Pacheco,
California.  Plaintiff Musgrave is the owner of a 2011 Kia Sorento SX, which is subject to the
Wiring Defect.  Plaintiff Musgrave purchased his vehicle from a Kia-authorized dealership in
California.  Unbeknownst to Plaintiff Musgrave at the time of purchasing his vehicle, his vehicle
contained the Wiring Defect.  To date, Defendants have failed to remediate the Wiring Defect in
his vehicle.  Plaintiff Musgrave purchased the vehicle for personal and household use.

16.    Plaintiff David Krakauer is a citizen of the State of New Jersey and resides in
Lincoln Park, New Jersey.  Plaintiff is the owner of a 2013 Hyundai Sonata, which is subject to the
Wiring Defect.  Plaintiff Krakauer purchased his 2013 Hyundai Sonata from a Hyundai-authorized
dealer in New Jersey.  Unbeknownst to Plaintiff Krakauer at the time of purchasing his 2013
Sonata, his vehicle contained the Wiring Defect.  To date, Defendants have failed to remediate the
Wiring Defect in his vehicle.  Plaintiff Krakauer purchased the vehicle for personal or household
use.

17.    Plaintiff Jonathan Raiskin is a citizen of the State of Florida and resides in New Port
Richey, Florida.  Plaintiff is the owner of a 2013 Hyundai Sonata, which is subject to the Wiring
Defect.  Plaintiff Raiskin purchased his 2013 Hyundai Sonata from a Hyundai-authorized dealer in
Florida.  Unbeknownst to Plaintiff Raiskin at the time of purchasing his 2013 Sonata, his vehicle
contained the Wiring Defect.  To date, Defendants have failed to remediate the Wiring Defect in
his vehicle.  Plaintiff Raiskin purchased the vehicle for personal or household use.

18.     Plaintiff Alexis Salvadore is a citizen of the State of Florida and resides in Greenacres, Florida.  Plaintiff is the owner of a 2013 Hyundai Sonata, which is subject to the Wiring Defect.  Plaintiff Salvadore purchased her vehicle at a Hyundai-authorized dealership in Florida.  Unbeknownst to Plaintiff Salvadore at the time of purchasing her 2013 Sonata, her vehicle contained the Wiring Defect.  To date, Defendants have failed to remediate the Wiring Defect in her vehicle.  Plaintiff Salvadore purchased the vehicle for personal or household use.

**B.     Defendants**

**1.     <u>Hyundai</u>**

19.     Defendant Hyundai Motor Company ("HMC") is a South Korean corporation with its principal place of business in Seoul, South Korea.  HMC is the parent corporation of HMA, a wholly-owned subsidiary.  As of December 31, 2016, HMC also owns a 33.88% stake of a joint venture with Kia Motor Co.[14]  HMC, through its various entities – including HMA – designs, manufactures, markets, distributes and sells Hyundai automobiles in California, Florida, New Jersey and throughout the United States through a network of dealerships that are the agents of HMA and HMC.

20.     Defendant Hyundai Motor America, Inc. ("HMA") is a California corporation with its principal place of business located at 10550 Talbert Avenue, Fountain Valley, California 92708.  HMA does business in California, Florida, New Jersey and throughout the United States.  HMA is a wholly owned U.S. subsidiary of HMC, and it engages in business, including the advertising, marketing and sale of Hyundai automobiles nationwide.  HMA is HMC's U.S. sales and marketing division, which oversees sales and other operations across the United States.  HMA distributes Hyundai vehicles and sells these vehicles through its network of dealerships that are the agents of HMA and HMC.  Money received from the purchase of a Hyundai vehicle from a dealership flows from the dealer to HMA and ultimately to HMC.

---

[14] 2016 Hyundai Motor Co. Annual Report at 127, *available at* https://www.hyundai.com/content/dam/hyundai/ww/en/images/about-hyundai/ir/financial-statements/annual-report/HMCAnnualReport20160630.pdf (last visited 11/6/18).

21. There exists, and at all times herein existed, a unity of ownership between HMC, HMA and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others. HMC communicates with HMA concerning virtually all aspects of the Hyundai products it distributes within the United States. At all relevant times, HMA acted as an authorized agent, representative, servant, employee and/or alter ego of HMC while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of Hyundai vehicles in the United States, including substantial activities that occurred within this jurisdiction.

22. Upon information and belief, the distribution, service, repair, installation, and decisions regarding the Wiring Defect within the Class Vehicles was performed by HMA. HMA also developed the post-purchase owner's manuals, warranty booklets, promotional material, and information included in maintenance recommendations and/or schedules for the Class Vehicles.

### 2. Kia

23. Defendant Kia Motors Corporation ("KMC") is a South Korean corporation with its principal place of business in Seoul, South Korea. As of December 31, 2017, HMC owned a 33.88% stake in KMC.[15] KMC is the parent corporation of Defendant KMA, a wholly-owned subsidiary.[16] KMC and HMC, through their various entities – including KMA – design, manufacture, import, market, distribute and sell Kia automobiles in California, Florida, New Jersey, and throughout the United States.

24. Defendant Kia Motors America, Inc. ("KMA") is a California corporation with its principal place of business at 111 Peters Canyon Road, Irvine, California 92606. KMA does business in California, Florida, New Jersey, and throughout the United States. KMA is the wholly-owned subsidiary of KMC and serves as KMC's U.S. sales and marketing division, which oversees sales and other operations across the United States. KMA distributes Kia vehicles and sells these

---

[15] 2016 Hyundai Motor Co. Annual Report at 127, *available at* https://www.hyundai.com/content/dam/hyundai/ww/en/images/about-hyundai/ir/financial-statements/annual-report/HMCAnnualReport20160630.pdf (last visited 11/6/18).
[16] 2017 Kia Motors Annual Report at 69, *available at* "http://pr.kia.com/file/downloadBlb.do?fil_sn=F200012579 (last visited 11/6/18).

vehicles through its network of more than 755 dealerships that are the agents of KMA, KMC, and HMC.  Money received from the purchase or lease of a Kia vehicle from a dealership flows from the dealer to KMA and ultimately to KMC and/or HMC.

25.     There exists, and at all times herein existed, a unity of ownership between KMC, KMA and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.  At all relevant times, KMA acted as an authorized agent, representative, servant, employee and/or alter ego of KMC while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of Kia vehicles in the United States, including substantial activities that occurred within this jurisdiction.  Upon information and belief, the distribution, service, repair, installation, and decisions regarding the Wiring Defect within the Class Vehicles was performed by KMA.  Upon information and belief, KMA developed the post-purchase owner's manuals, warranty booklets, promotional material, and information included in maintenance recommendations and/or schedules for the Class Vehicles.

26.     Further, given HMC's ownership interest in KMC, there exists, and at all times herein existed, a unity of ownership between all Defendants and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.

27.     All Defendants have deep and systematic contacts throughout the State of California.

28.     Kia makes recall decisions from its headquarters in Irvine, California.

29.     The majority of Kia's executives are based in California, and as such critical business decisions, marketing, and operations decisions emanate from California.

30.     The Kia Design Center America, located in Irvine, California, includes a design and remodeling studio, painting facilities, new model presentation room, and a visual presentation room.  The Kia Design Center America is located on a 22 acre (8.9 ha) corporate campus.

31.     Irvine California is also home to Kia's America Design & Technical Center.  The America Design & Technical Center "undertakes research into concept cars and the development of mass-production cars suitable for the U.S. market."[17]

32.     Kia's California Proving Ground facility, located in California City, California, "plays a key role in developing vehicles for the North American market.  This is where performance and durability tests are conducted on all Kia vehicles sold in the U.S. and on locally developed parts."[18]  Kia Motors California Proving Ground is one of the main overseas research and development centers for KMC.

33.     Hyundai also makes recall decisions from its headquarters in Fountain Valley, California.

34.     Examples of Hyundai's systematic contacts in California include the Hyundai America Design & Engineering Center in Irvine, California, and the "Hyundai-Kia Motors California Proving Ground" in California City, CA.[19]

### III.  JURISDICTION AND VENUE

35.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367.

36.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 Class members, members of the Classes (as defined below) are citizens of states different from Defendants, and greater than two-thirds of the members of the Classes reside in states other than the states in which Defendants are citizens.

37.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because: (a) Plaintiff Musgrave resides within this District, and (b) all Defendants transact significant business within this District, Defendants have designed, marketed, advertised, sold, and/or leased the Class Vehicles and component parts within this District and through numerous dealers doing business in

---

[17] *Id.* at 58.
[18] *Id.*
[19] https://www.hyundainews.com/en-us/releases/380 (last visited 11/6/18).

the District.  Defendants' actions have caused harm to Plaintiffs, as well as tens of thousands of Class members residing in California.  Venue is further proper in this District pursuant to 28 U.S.C. § 1391(c)(3) with respect to HMC and KMC because, as non-residents of the United States, HMC and KMC "may be sued in any judicial district."

## IV.  FACTS COMMON TO ALL CAUSES OF ACTION

### A.   The Class Vehicles

38.     The Class Vehicles include the 2011-2014 Kia Optima, 2011-2014 Kia Sorento, 2010-2015 Kia Soul, 2011-2014 Hyundai Sonata, 2011-2014 Hyundai Sonata Hybrid, 2011-2014 Hyundai Santa Fe, and 2011-2014 Hyundai Santa Fe Sport.  The Class Vehicles are largely identical mechanically.  The 2011-2014 Kia Optima and the 2011-2014 Hyundai Sonata are mechanical twins, meaning that they "share nearly everything under the skin, from a platform and engines to drivetrains, transmissions and suspension components."[20]  The same is true of the 2011-2014 Kia Sorento and the 2011-2014 Hyundai Santa Fe.[21]

39.     The 2011-14 Kia Sorento and Optima vehicles were manufactured at the same facility, Kia Motors Manufacturing Georgia.  The Hyundai Santa Fe models were manufactured in the same location.  The Hyundai Sonata vehicles were manufactured in Montgomery, Alabama.

40.     Several of the Class Vehicles were involved in prior recalls regarding engine issues. In September 2015, Hyundai recalled approximately 570,000 2011-12 Sonatas for defects related to 2-liter and 2.4-liter gasoline direct injection engines.  This recall expanded in 2017 to include another 572,000 vehicles with Theta II engines.  This expansion included the 2013-14 Sonata and Santa Fe Sport.  Similarly, Kia previously recalled over 600,000 model year 2011-14 Kia Optima, 2012-14 Sorento and 2011-13 Sportage vehicles due to defects in the Theta engines.  However, as

---

[20] https://www.autotrader.com/car-reviews/2014-kia-optima-vs-2014-hyundai-sonata-whats-diffe-227957 (last visited 11/6/18).
[21] https://www.nytimes.com/2011/07/10/automobiles/korean-automakers-are-siblings-yet-rivals.html ("Despite the companies' insistence that they are independent, vehicles from Hyundai and Kia have much in common.  For example, the Hyundai Santa Fe and the mechanically similar Kia Sorento roll off a Kia assembly line in West Point, Ga., together.  Their starting prices are just $650 apart.") (last visited 11/6/18).

documented by CAS, these prior recalls did not address or remedy the Wiring Defect.[22]  Indeed, not only does the Wiring Defect affect more models than were included in the prior recalls, but as CAS also reports, many of the previously-recalled vehicles are continuing to spontaneously catch fire.

**B.     The Wiring Defect**

41.     Defendants manufactured, distributed, and sold approximately three million Class Vehicles afflicted with the Wiring Defect.  The Wiring Defect causes electrical shortages, which can burn or melt the vehicles' wiring and lead to an electrical fire during normal operation.  The Wiring Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers because it renders the vehicle susceptible to fire vehicle under normal driving conditions.

42.     As of June 11, 2018, NHTSA's Vehicle Owner Questionnaire database alone revealed:

> [A]t least 120 owners have reported that their 2011-14 Optima, Sorento, Sonata, or Santa Fe caught fire without a preceding collision.  An additional 229 complaints identified melted wires in the engine bay, smoke, and burning odors.  The vast majority of documented complaints discussing the origin of the issue note "that smoke and/or flames are first seen emanating from the engine bay, then the car is quickly engulfed.

43.     That number continues to grow.  Between June 11, 2018 and October 12, 2018, CAS learned of at least 103 additional reports of fires in the Class Vehicles, nearly one report every day for four months (which represents an 85% increase of reported fires in the Class Vehicles).  Twelve of the 103 additional reported fires occurred in Class Vehicles that were previously recalled by Defendants.

**C.     Defendants' Knowledge Of The Wiring Defect**

44.     Defendants have known about the Wiring Defect for years.  Even after numerous complaints related to fires and burned wiring, as well as recalls for other engine-related issues, the

---

[22] https://www.autosafety.org/wp-content/uploads/2018/06/Center-for-Auto-Safety-Addendum-to-June-11-2018-petition-regarding-Kia-Hyundai-fires.pdf (last visited 12/2/18).

Wiring Defect has gone unaddressed and continues to affect a large number of Class Vehicles.

45.     Numerous purchasers and lessees of the Class Vehicles have experienced the Wiring Defect and/or have not received a meaningful fix from Defendants to date.  At least 120 owners have reported that their 2011-14 Optima, Sorento, Sonata, or Santa Fe caught fire without a preceding collision.  An additional 229 complaints identified melted wires in the engine bay, smoke, and burning odors.  The complaints of numerous owners of the Class Vehicles demonstrate that the Wiring Defect is widespread and dangerous.

46.     Defendants have constantly tracked the National Highway Traffic Safety Administration ("NHTSA") database to track reports of electrical system fires.  From this source, they knew that the Class Vehicles were experiencing unusually high levels of fires.

47.     The following complaints are but a sample of those submitted to NHTSA concerning the Wiring Defect in the Class Vehicles:

### 1.   2011 Hyundai Sonata

- **Date Complaint Filed:** November 12, 2018
  **Date of Incident:** January 1, 2017
  **Component(s):** ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11150902
  **Consumer Location:** LAKELAND, FL
  **Vehicle Identification No. (VIN):** 5NPEC4AB0BH****
  **Summary of Complaint:**
  I NO LONGER HAVE FOG LIGHTS THAT ENTIRE AREA HAS MELTED. MY TAIL LIGHTS GO OUT EVERY TWO OR 3 WEEKS AND THE BULBS ARE BLACK. THERE IS A BURNING SMELL COMING FROM THE VEHICLE ONLY WHEN THE CAR IS BEING DRIVEN OR PARKED ON. THE AC LINE THAT SHOULD BE COLD IS HOT.

  RECENTLY THE CAR WAS LEAKING OIL AND SMOKING THE DEALERSHIP SAID IT HAD TO DO WITH THE ENGINE RECALL. MY ENGINE SEIZED WHILE DRIVING IN 2016 AND I HAD TO GET A ENGINE REPLACEMENT. AFTER THE ENGINE REPLACEMENT MY TURBO WENT OUT WHICH ONLY ALLOWED THE CAR TO DRIVE SLOW AND THE ENGINE SOUNDED THE WHOLE TIME DRIVING. IT HAD SOMETHING TO DO WITH WHEN THEY REPLACED THE ENGINE.

- **Date Complaint Filed:** November 12, 2018
  **Date of Incident:** October 23, 2018
  **Component(s):** ENGINE, EXTERIOR LIGHTING, SEAT BELTS
  **NHTSA ID Number:** 11150921

**Consumer Location:** CHICAGO, IL
**Vehicle Identification No. (VIN):** 5NPEC4AB6BH****
**Summary of Complaint:**
TAIL LIGHT ALWAYS KEEP GOING OUT AND HEAD LIGHT ENGINES KEEP
ACTING FUNNY . . . .

- **Date Complaint Filed:** November 11, 2018
  **Date of Incident:** October 1, 2018
  **Component(s):** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11150781
  **Consumer Location:** BEDFORD HEIGHTS, OH
  **Vehicle Identification No. (VIN):** 5NPEB4AC1BH****
  **Summary of Complaint:**
  A SHORTAGE IN THE ELECTRICAL SYSTEM CAUSING THE HEADLIGHTS TO
  GO OUT, THE BRAKE LIGHTS TO NOT COME ON AND HAVE THE CHECK
  ENGINE LIGHT TO COME ON, AND THE CHECK TIRE PRESSURE LIGHT TO
  COME ON AS WELL.

- **Date Complaint Filed:** August 27, 2018
  **Date of Incident:** June 7, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11122750
  **Consumer Location:** SOUTHAVEN, MS
  **Vehicle Identification No. (VIN):** 5NPEC4AB5BH****
  **Summary of Complaint:**
  ENGINE WAS RECALLED IN 2015, THE WARRANTY FOR THE ENGINE
  RECALLED WAS EXTENDED TO 10 YEARS 120,000 MILE WARRANTY. I JUST
  RECENTLY BOUGHT A 2011 HYUNDAI SONATA TURBO 2.0 WITH 146,000
  MILES. AFTER LESS THAN A MONTH OF MY SON DRIVING IT THE ENGINE
  BEGAN STALLING OUT AND SMELLED OF SMOKE. I CONTACTED HYUNDAI
  TO SEE IF THEY WOULD PERFORM THE INSPECTION AND DO THE REPAIR
  WORK THEY STATED THEY WOULD NOT SINCE THE CAR EXCEEDED HAD
  EXCEEDED THE MILEAGE WARRANTY. I AM CURRENTLY HAVING A NEW
  ENGINE INSTALLED, AND WOULD LIKE THE NHTSA TO INVESTIGATE AND
  SEE IF I CAN GET A REIMBURSEMENT FOR THE ENGINE REPLACEMENT COST

- **Date Complaint Filed:** July 1, 2018
  **Date of Incident:** June 30, 2018
  **Component(s):** ELECTRICAL SYSTEM, ENGINE, UNKNOWN OR OTHER
  **NHTSA ID Number:** 11105024
  **Consumer Location:** MOORESVILLE, NC
  **Vehicle Identification No. (VIN):** 5NPEC4ACXBH****
  **Summary of Complaint:**
  CAR WAS IN MOTION HEADING STRAIGHT ON A BUSY INTERSTATE. I HAD
  BEEN DRIVING FOR APPROXIMATELY 45 MINUTES WHEN IT COMPLETELY
  DIED CAUSING THE CAR TO COME TO A COMPLETE STOP RIGHT IN THE
  MIDDLE OF A DARK INTERSTATE. ALL OF THE DASH LIGHTS CAME ON RIGHT
  WHEN THE CAR STARTED TO DIE. THERE WAS NO SHOULDER ON THIS PART
  OF THE INTERSTATE AND IT WOULD NOT MAKE IT TO THE NEXT EXIT. WHEN
  THE CAR CAME TO A COMPLETE STOP ALL THE LIGHTS WERE THEN OFF AND
  I COULD NOT EVEN TURN ON THE HAZARD LIGHTS, NOTHING AT ALL WAS
  WORKING. I TRIED TO RESTART IT A COUPLE OF TIMES UNTIL I SAW SMOKE
  COMING FROM UNDER THE HOOD THEN I STOPPED BECAUSE I THOUGHT IT
  WAS GOING TO CATCH ON FIRE. I ENDED UP GETTING IT TOWED OFF THE

INTERSTATE TO MY HOUSE. THE 2011 SONATA HAS KNOWN ENGINE PROBLEMS BUT NOT SURE YET IF MINE WAS A RESULT OF THE MOTOR LOCKING UP OR IF IT WAS ELECTRICAL OR PERHAPS BOTH.

- **Date Complaint Filed:** April 17, 2018
  **Date of Incident:** April 17, 2018
  **Component(s):** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11088597
  **Consumer Location:** WEAVER, AL
  **Vehicle Identification No. (VIN):** 5NPEC4AC0BH****
  **Summary of Complaint:**
  THE WIRES FOR THE BRAKE LIGHTS HAS MELTED ON BOTH SIDES OF THE BRAKE HOUSING AND ALL OF IT NEEDS TO BE REPLACED. HYUNDAI DEALERSHIP SAYS THEY REPLACE THESE OFTEN BECAUSE OF THIS! THEY WORKED ONE DAY AND THEN WHEN THE CAR WAS TURNED ON AGAIN THEY DID NOT. PASSENGER SIDE WENT OUT AND 4 WEEKS LATER THE DRIVERS SIDE DID THE SAME THING.

- **Date Complaint Filed:** February 6, 2014
  **Date of Incident:** April 11, 2012
  **Component(s):** EXTERIOR LIGHTING, ELECTRICAL SYSTEM
  **NHTSA ID Number:** 10563277
  **Consumer Location:** POMONA, CA
  **Vehicle Identification No. (VIN):** 5NPEB4AC1BH****
  **Summary of Complaint:**
  I HAVE PURCHASE MY VEHICLE IN MARCH-2011 AS A CERTIFIED PRE-OWNED VEHICLE. THERE ARE SEVERAL COMPLAINTS I HAVE ON THIS VEHICLE SINCE PURCHASED, BUT I WILL STICK WITH A RECURRING ISSUE.

  4/11/12 I TOOK MY VEHICLE IN BECAUSE A BLOWN PASSENGER LOW BEAM HEADLIGHT THAT WENT OUT. THEY DETERMINED THAT UPON INSPECTION FOUND AN OPEN CIRCUIT DUE TO BLOWN RIGHT FRONT BULB. IT WAS "CORRECTED."

  06/07/12 TOOK MY VEHICLE ONCE AGAIN FOR THE DRIVERS SIDE HEADLIGHT THAT WENT OUT. INSTALLED BULB

  5/2/13 TOOK MY VEHICLE FOR A BLOWN PASSENGER LOW BEAM HEADLIGHT THAT WENT OUT. "UNDETERMINED."

  2/5/14 TOOK MY VEHICLE FOR A BLOWN PASSENGER LOW BEAM HEADLIGHT THAT WENT OUT. "UNDETERMINED

- **Date Complaint Filed:** December 6, 2013
  **Date of Incident:** November 28, 2013
  **Component(s):** ENGINE, STRUCTURE
  **NHTSA ID Number:** 10555125
  **Consumer Location:** WILMINGTON, DE
  **Vehicle Identification No. (VIN):** 5NPEB4AC7BH****
  **Summary of Complaint:**
  ON THANKSGIVING EVENING NOVEMBER 28, 2013 @ 7:30 PM, MY 2011 HYUNDAI SONATA THAT I PURCHASED NEW, CAUGHT FIRE ON I 95 WHILE DRIVING IT. THE CAR HAS ONLY 30,350 MILES AND IS PROPERLY MAINTAINED AND GARAGE KEPT. THE VEHICLE HAD THE OIL AND FILTER

REPLACED 5 DAYS EARLIER AND THERE ARE NO SIGNS OF ANY FLUIDS
LEAKING IN THE GARAGE. THERE WERE NO WARNING LIGHTS THAT CAME
ON AND THE TEMPERATURE GAUGE READ AS NORMAL UNTIL JUST BEFORE
THE ENGINE SHUT OFF (THEN ALL THE DASH LIGHTS CAME ON) AND WE
PULLED OVER ONTO THE SHOULDER OF A BUSY HIGHWAY AT NIGHT. I
RAISED THE HOOD, SMOKE POURED OUT AND I COULD SEE SMALL FLAMES
UNDER THE ENGINE. MINUTES LATER THE FLAMES WERE 20 FEET HIGH AND
THE ENTIRE CAR BURNED UNTIL FIRE TRUCKS AND POLICE ARRIVED ON
THE SCENE. THE VEHICLE IS A TOTAL LOSS.

- **Date Complaint Filed:** March 14, 2013
  **Date of Incident:** September 3, 2012
  **Component(s):** ELECTRICAL SYSTEM, POWER TRAIN, STEERING, ENGINE
  **NHTSA ID Number:** 10503081
  **Consumer Location:** FORESTVILLE, MD
  **Vehicle Identification No. (VIN):** 5NPEB4AC7BH****
  **Summary of Complaint:**
  I HAVE SEVERAL COMPLAINTS REGARDING THIS VEHICLE. I HAVE HAD THIS
  CAR TWO YEARS AND ABOUT TWO MONTHS AND HAVE HAD NOTHING BUT
  PROBLEMS (PURCHASED BRAND NEW) -- **I'VE HAD TO GET A NEW MOTOR
  (ENGINE CAUGHT ON FIRE (ELECTRICAL/SMOKING)** WHILE DRIVING
  DOWN THE BELTWAY), REPLACED TIRE ROD, NEED 4 BRAND NEW TIRES,
  TRANSMISSION SLIPPING, AND OTHER ELECTRICAL PROBLEMS …

### 2. 2012 Hyundai Sonata

- **Date Complaint Filed:** November 19, 2018
  **Date of Incident:** November 18, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11152354
  **Consumer Location:** MOLINE, IL
  **Vehicle Identification No. (VIN):** 5NPEC4ACXCH****
  **Summary of Complaint:**
  VEHICLE TRAVELING WEST BOUND INTERSTATE 80, 3 MILES WEST OF WEST
  BRANCH, IOWA ON NOVEMBER 18,2018. SPEED 65 MPH WENT TO PASS
  TRAFFIC BY APPLY THROTTLE THE CAR WOULD NOT ACCELERATE, CAR
  MADE SOUND OF OVER REVVING. WHITE SMOKE APPEARED FROM
  UNDERNEATH HOOD EQUALLY ON BOTH SIDES. IMMEDIATELY STEERED
  CAR TO SIDE OF ROAD. AFTER THE VEHICLE WAS STOPPED SMOKE CAME
  FROM CAR VENTS. LEFT VEHICLE WHITE SMOKE BECAME MORE INTENSE
  FROM FRONT OF VEHICLE. FRONT OF VEHICLE CAUGHT FIRE ENTIRE
  VEHICLE ENGULFED IN FLAMES WITHIN 4 MINUTES ATTEMPT TO PASS
  TRAFFIC. 911 CALLED IOWA HIGHWAY PATROL AND IOWA CITY FIRE
  DEPARTMENT RESPONDED. VEHICLE TOTAL LOSS NO INJURIES OTHER THAN
  SMOKE INHALATION OF THE 2 OCCUPANTS. VEHICLE SINGLE OWNER NO
  ACCIDENT HISTORY, ENGINE RECALL BY HYUNDAI COMPLIED WITH AND NO
  PROBLEM DETECTED.

- **Date Complaint Filed:** November 17, 2018
  **Date of Incident:** November 16, 2018
  **Component(s):** ELECTRICAL SYSTEM, EXTERIOR LIGHTING
  **NHTSA ID Number:** 11152165
  **Consumer Location:** TAMPA, FL
  **Vehicle Identification No. (VIN):** 5NPEC4AC6CH****

**Summary of Complaint:**
THE REAR TAIL LIGHTS BURN OUT, THE HOUSING UNIT OR LENSES MELT
AND THE LIGHTS DO NOT WORK. THIS HAS HAPPENED SEVERAL TIMES,
REPLACEMENT OF LIGHT BULBS ARE CONTINUOUS AND THE LIGHTS SEEM
TO HAVE SOME SORT OF SHORTAGE. THEY WORK SOMETIMES AND
SOMETIMES THEY DO NOT.

- **Date Complaint Filed:** October 26, 2018
  **Date of Incident:** June 8, 2018
  **Component(s):** STRUCTURE, ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11142780
  **Consumer Location:** CHARLOTTE, NC
  **Vehicle Identification No. (VIN):** 5NPEC4AB0CH****
  **Summary of Complaint:**
  ON JUNE 8TH, 2018 MY HUSBAND WAS DRIVING DOWN INTERSTATE 85 IN
  CHARLOTTE NC GOING ABOUT 60 MPH WHEN THE VEHICLE STALLED. HE
  COASTED THE CAR TO THE SIDE OF THE INTERSTATE. HE TURNED THE
  VEHICLE OFF THEN TRIED TO RESTART IT AND NOTHING HAPPEN AND
  POWER WAS DEAD IN THE CAR. THEN HE SAW SMOKE COMING FROM UNDER
  THE HOOD. THE DOORS WON'T OPEN SO HE HAD TO CLIMB OUT THOUGH
  THE SUNROOF TO SAFETY. HE OPENED THE HOOD AND THE ENGINE WAS
  INFLAMED WITH FIRE. HE CALLED THE FIRE DEPARTMENT, THEY CAME AND
  PUT THE FIRE OUT. THE REASON I'M FILING THIS COMPLIANT IS BECAUSE
  HE COULD HAVE BEEN SERIOUSLY HURTOR KILLED IF THE SUNROOF WAS
  CLOSE. HYUNDAI HAS NO EXPLANATION FOR WHY THIS IS HAPPENING AND
  MY VEHOWAS TOTAL LOST. WE ALSO HAVE PICTURES AND A VIDEO. I
  CAN'T UPLOAD THE VIDEO SO IF SOMEONE CONTACTS ME I WILL EMAIL IT.

- **Date Complaint Filed:** August 30, 2018
  **Date of Incident:** August 26, 2018
  **Component(s):** ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11123583
  **Consumer Location:** DOVER, FL
  **Vehicle Identification No. (VIN):** 5NPEC4AB7CH****
  **Summary of Complaint:**
  I WAS DRIVING MY 2012 HYUNDIA SONATA DOWN THE ROAD, AND ALL OF A
  SUDDEN, THE WHOLE CAR SHUT OFF. THIS CAUSED THE STEERING WHEEL
  AND THE BRAKES TO FAIL. FORTUNATELY, I WAS ABLE TO MAKE IT TO THE
  SIDE OF THE ROAD, AND I SMELLED SMOKE. AT FIRST, I THOUGHT THE
  ENGINE WAS OVERHEATING, SO I OPENED THE HOOD TO SEE WHAT WAS
  GOING ON. I SAW A BALL OF FIRE, AND QUICKLY GRABBED MY 4 YEAR OLD
  AND 10 YEAR OLD OUT OF THE CAR. BY THE TIME I GOT THEM OUT OF THE
  CAR, THE WHOLE ENGINE BAY ENGULFED IN FLAMES. AFTER TELLING MY
  STORY, I HAVE HAD MULTIPLE PEOPLE REACH OUT TO ME WITH SIMILAR
  STORIES.

- **Date Complaint Filed:** November 26, 2013
  **Date of Incident:** November 24, 2013
  **Component(s):** ELECTRICAL SYSTEM, STRUCTURE, ENGINE
  **NHTSA ID Number:** 10553823
  **Consumer Location:** MATTHEWS, NC
  **Vehicle Identification No. (VIN):** 5NPEB4AC1CH****
  **Summary of Complaint:**

WALKED OUT OF STORE I HAD BEEN SHOPPING IN FOR OVER AN HOUR AND CAR WAS IN FLAMES. THE FIRE INVESTIGATOR EXPLAINED IT AS AN ELECTRICAL SHORT THAT STARTED AT THE MAIN ENGINE WIRE HARNESS AND MELTED THE TUBING/WIRING ALL THROUGH THE ENGINE COMPARTMENT DOWN NEAR PASSENGER HEADLIGHT AND THE MELTING WIRES/TUBING/RUBBER DRIPPED AND IGNITED ON A PILE OF LEAVES UNDERNEATH THE CAR IN THE PARKING SPACE. THE RESULTING FIRE AND ELECTRICAL BURN MELTED ALL RUBBER PLASTIC,EXTERNAL BELTS, WIRE HARNESS, FRONT BUMPER, INTAKE MANIFOLD AND ANY PLASTIC RUBBER,FLUID LIDS, EXTERIOR PARTS SURROUNDING OR ATTACHED TO THE ENGINE.

### 3.   2013 Hyundai Sonata

- **Date Complaint Filed:** October 25, 2018
  **Date of Incident:** October 24, 2018
  **Component(s):** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11142519
  **Consumer Location:** SAN ANTONIO, TX
  **Vehicle Identification No. (VIN):** 5NPEB4AC7DH****
  **Summary of Complaint:**
  WHILE CAR WAS PARKED, THE PASSENGER SIDE HEADLAMP CAUGHT FIRE AND BURNED MY LIGHT, BUMPER, AND COOLANT TANK. THE FRONT LIGHTS BURNED OUT AND THE BRAKE LIGHTS ARE CONSTANTLY BURNING OUT AND STAYING ON WHILE CAR IS OFF. ALREADY REPLACED THE BRAKE STOPPER SWITCH BUT STILL SAME ISSUE.

- **Date Complaint Filed:** September 24, 2018
  **Date of Incident:** September 20, 2018
  **Component(s):** ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11130902
  **Consumer Location:** ROCHELLE, IL
  **Vehicle Identification No. (VIN):** 5NPEC4AB4DH****
  **Summary of Complaint:**
  MY CAR SHUTDOWN WHILE I WAS ON THE ROAD, THURS. SEPT. 20TH, 2018 AT 10 PM.. I COULDN'T GET TO TURN BACK OVER, COULDN'T GET THE HAZARDS TO WANT TO STAY ON, STEERING WHEEL LOCKED UP. I CALLED 911 BASED ON THE FACT I WAS ON A BACK ROAD, AND HAD VEHICLES PASSING ME IN THE MIDDLE OF THE NIGHT. I THEN NOTICED AN ODD SMELL, WHICH I MENTIONED TO 911. LESS THAN A MINUTE LATER, SMOKE BEGAN POURING THROUGH THE VENTS. AS THEY ASK MY LOCATION, I NOTICED A FLICKER OUTSIDE MY WINDOW TOWARDS THE FRONT END OF THE VEHICLE (ALMOST LOOKED LIKE IT CAME FROM THE WHEEL WELL). I GOT OUT, ANSWERED THE QUESTION, AS THE ENTIRE FRONT END OF MY CAR WAS ON FIRE. WITHIN A MATTER OF MINUTES, THE ENTIRE CAR WAS ENGULFED. THE FIRE DEPARTMENT REACTED QUICKLY, BUT THE CAR WAS A LOSS. I'M CURRENTLY WAITING TO HEAR BACK FROM INSURANCE, AS I HAD RECENTLY BOUGHT THE VEHICLE IN FEB. OF 2017, WITH NO KNOWLEDGE OF ANY PROBLEMS.

- **Date Complaint Filed:** September 21, 2018
  **Date of Incident:** August 10, 2018
  **Component(s):** ENGINE, UNKNOWN OR OTHER

NHTSA ID Number: 11130638
Consumer Location: BROCKTON, MA
Vehicle Identification No. (VIN): 5NPEC4ABXDH****
Summary of Complaint:
I WAS DRIVING THE CAR ON FRIDAY NIGHT AUG 10, 2018 AND BEFORE COMING TO A STOP SIGN THE CAR JUST CUT OFF. WHEN I WENT TO RESTART, THE DASH BORED LIGHTS WERE GOING WILD AND THEN THERE WAS SMOKE COMING FROM THE CAR ENGINE. WHEN I LIFTED THE HOOD, THE ENGINE WAS ON FIRE.

- **Date Complaint Filed:** August 8, 2018
  **Date of Incident:** July 19, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11118528
  **Consumer Location:** MOBILE, AL
  **Vehicle Identification No. (VIN):** N/A
  **Summary of Complaint:**
  MY ENGINE CATCH ON FIRE. I WAS DRIVING HIGHWAY WHEN I STARTED TO HEAR A LOUD FLAPPING / KNOCKING NOISE . IT GOT LOUDER WHEN I PRESSED ON THE GAS PEDAL. ALL OF A SUDDEN THE ENGINE DIED GOING 55 MPH ON THE HIGHHWAY. I GUIDE THE CAR TO THE SIDE OF THE HIGHWAY . IMMEDIATELY SEEING SMOKE COMING FROM THE HOOD/ ENGINE. THEN FLAMES SHOOT UP FROM THE ENGINE. GOT OUT THE CAR CALL 911 . THE FIRE DEPARTMENT WAS ABLE TO PUT THE FIRE OUT BUT IT WAS TOO LATE THE WHOLE ENGINE WAS DESTROY. GLAD I WAS NOT HURT BUT MY CAR IS A TOTAL LOSS. I DIDNT HAVE THE POLICE REPORT WILL HAVE IT WITHIN 10 DAYS PER ALABAMA STATE TROOPER DEPARTMENT

- **Date Complaint Filed:** August 3, 2018
  **Date of Incident:** July 28, 2018
  **Component(s):** ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11115600
  **Consumer Location:** HANOVER, MD
  **Vehicle Identification No. (VIN):** 5NPEC4AC9DH****
  **Summary of Complaint:**
  I WAS DRIVING MY VEHICLE ON THE 95 N GOING ONTO 295 N HIGHWAY FOR APPROXIMATELY 1 HOUR WHEN IT STARTED TO LOSE POWER AND SMOKE. I PULLED OVER AND DISCOVERED VIA ANOTHER CAR PASSING BY THAT THE VEHICLE WAS ON FIRE AND IT WENT UP IN FLAMES.

- **Date Complaint Filed:** October 10, 2013
  **Date of Incident:** August 24, 2013
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10547548
  **Consumer Location:** PHOENIX, AZ
  **Vehicle Identification No. (VIN):** 5NPEB4AC4DH****
  **Summary of Complaint:**
  THE CONTACT OWNS A 2013 HYUNDAI SONATA. THE CONTACT STATED THAT THE VEHICLE IGNITED INTO FLAMES WHILE PARKED AND UNOCCUPIED. THE FIRE DEPARTMENT EXTINGUISHED THE FIRE. AN INDEPENDENT INVESTIGATOR STATED THE FIRE ORIGINATED IN THE ENGINE COMPARTMENT. THE VEHICLE WAS COMPLETELY DESTROYED AND TOWED TO AN AUTHORIZED DEALER. THE MANUFACTURER WAS NOTIFIED OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 18,000.

4. **2014 Hyundai Sonata**

- **Date Complaint Filed:** September 8, 2018
  **Date of Incident:** September 7, 2018
  **Component(s):** ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11128195
  **Consumer Location:** AUSTIN, TX
  **Vehicle Identification No. (VIN):** 5NPEC4AB8EH****
  **Summary of Complaint:**
  UNIVERSITY OF HOUSTON STREET IN SLOW SPEED, ENGINE STALLED AND
  PASSENGER NOTICED SMOKE UPON EXITING THE VEHICLE THE CAR WENT
  UP IN FLAMES. POLICE MENTIONED COULD BE A ELECTRICAL ISSUE AND
  MENTIONED OF SIMILAR INCIDENTS ON HYUNDAI VEHICLES.

- **Date Complaint Filed:** September 11, 2017
  **Date of Incident:** June 24, 2017
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11022683
  **Consumer Location:** SAN CLEMENTE, CA
  **Vehicle Identification No. (VIN):** 5NPEC4AB5EH****
  **Summary of Complaint:**
  HYUNDAI SONATA ENGINE FAILURE. I WAS DRIVING AND MY CAR STALLED
  IN THE MIDDLE OF THE ROAD. I PUT IT IN PARK AND PUT MY HAZARDS ON. I
  PROCEEDED TO START THE CAR AND WHEN I DID, THE CAR CAUGHT ON
  FIRE. SMELLED LIKE WIRES ON FIRE. HYUNDAI WAS NOTIFIED AND MY CAR
  WAS TOWED AND FIXED AT THE DEALERSHIP. IT TOOK ABOUT 6 WEEKS TO
  FIX. TO MY DISAPPOINMENT, HYUNDAI IS ONLY OFFERING 12K MILES OR
  ONE YEAR WARRANTY. THIS CAR HAS HAD SEVERAL RECALLS AND I HAVE
  BROUGHT IT TO THE DEALER FOR EVERY ONE OF THEM. I SPENT 30K ON
  THIS CAR (HYUNDAI SONATA 2.0T) LOVE THE LOOK OF IT BUT NOT
  RELIABLE. I HAVE SENT THEM A LETTER TO ASK FOR A BETTER WARRANTY
  ON THE "NEW" ENGINE THEY REPLACED.

48.     There are similar complaints for the 2011-2014 Hyundai Santa Fe and 2013-14

Santa Fe Sport.

1. **2011 Hyundai Santa Fe**

- **Date Complaint Filed:** October 16, 2018
  **Date of Incident:** October 13, 2018
  **Component(s):** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11140649
  **Consumer Location:** SEYMOUR, TN
  **Vehicle Identification No. (VIN):** 5XYZKDAG0BG****
  **Summary of Complaint:**
  AFTER SIGNALING LANE CHANGE/TURN FROM HIGHWAY, TURN SIGNAL
  SWITCH CONTINUED CLICKING WHEN TURN WAS COMPLETED AND TURN
  SIGNAL WAS IN OFF POSITION. SMOKE WAS COMING FROM THE LEFT FRONT
  VENT. THE FOLLOWING DAY, STARTED THE VEHICLE, CLICKING
  CONTINUED, TURN SIGNALS WERE IN THE OFF POSITION, LEFT SIGNAL WAS
  FLASHING. I REMOVED FUSE BOX COVER INSIDE VEHICLE AND SMELLED

THE ODOR OF SOMETHING BURNING. CONTACTED HYUNDAI AND WAS
ADVISED THERE IS NO RECALL INVOLVING SIGNALS.

- **Date Complaint Filed:** March 22, 2018
  **Date of Incident:** March 2, 2018
  **Component(s):** ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11080980
  **Consumer Location:** BIG RAPIDS, MI
  **Vehicle Identification No. (VIN):** 5XYZGDAG4BG****
  **Summary of Complaint:**
  [2011 Santa Fe] CAR WAS DRIVEN ABOUT 10 MILES AND THEN PARKED INSIDE
  AN ATTACHED GARAGE. NO ISSUES WERE PRESENT DURING THE DRIVE. THE
  IGNITION WAS TURNED OFF AND KEY REMOVED FROM VEHICLE. AFTER
  APPROXIMATELY 1 HOUR HAD PASSED THE CAR STARTED ON FIRE. FLAMES
  WERE VISIBLE BEHIND THE FRONT RIGHT HEADLIGHT AND FRONT RIGHT
  WHEEL. LUCKILY NO ONE WAS HARMED. THE FIRE CAUSED SIGNIFICANT
  DAMAGE TO THE GARAGE AND HOME. **<u>FIRE DEPARTMENT INVESTIGATION
  CONCLUDED THAT THE CAUSE OF THE FIRE WAS NOT EXTERNAL TO
  THE VEHICLE</u>**.

- **Date Complaint Filed:** October 8, 2017
  **Date of Incident:** October 7, 2017
  **Component(s):** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11032283
  **Consumer Location:** MEQUON, WI
  **Vehicle Identification No. (VIN):** 5XYZK4AG9BG****
  **Summary of Complaint:**
  WHILE ON A LONG TRIP ABOUT 100 MILES INTO THE DRIVE WHILE DRIVING
  ON THE FREEWAY WITH THE CRUISE CONTROL SET TO 78 MPH THE
  STEERING COLUMNS (FROM THE TURN SIGNAL SIDE) STARTS SMOKING AND
  IT SMELLED LIKE ELECTRICAL WIRING BURNING. . . .

### 2. <u>2012 Hyundai Santa Fe</u>

- **Date Complaint Filed:** November 9, 2018
  **Date of Incident:** June 1, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11150343
  **Consumer Location:** EAST POINT, GA
  **Vehicle Identification No. (VIN):** 5XYZK3AB9CG****
  **Summary of Complaint:**
  THE CONTACT OWNS A 2012 HYUNDAI SANTA FE. WHILE DRIVING 55 MPH,
  THE VEHICLE STALLED AND SMOKE CAME FROM THE ENGINE
  COMPARTMENT. THE CONTACT ALSO MENTIONED THAT THE ENGINE MADE
  AN ABNORMAL NOISE. THE VEHICLE WAS TAKEN TO SOUTHTOWNE
  HYUNDAI (7665 US HWY 85, RIVERDALE, GA 30274, (770) 471-1000) WHERE THE
  CONTACT WAS INFORMED THAT THE ENGINE NEEDED TO BE REPLACED.

THE VEHICLE WAS NOT REPLACED. THE MANUFACTURER WAS MADE
AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 121,000.

- **Date Complaint Filed:** October 25, 2018
  **Date of Incident:** October 13, 2018
  **Component(s):** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11143131
  **Consumer Location:** IRVINE, CA
  **Vehicle Identification No. (VIN):** N/A
  **Summary of Complaint:**
  2012 HYUNDAI SANTA FE. CONSUMER WRITES IN REGARD TO SAFETY
  RECALL DUE TO FIRES AND MELTNG WIRES AND QUESTIONS IF VEHICLE
  FALLS UDER RECALL.

- **Date Complaint Filed:** April 26, 2016
  **Date of Incident:** April 18, 2016
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10861488
  **Consumer Location:** SHELTON, CT
  **Vehicle Identification No. (VIN):** 5XYZK4AG8CG****
  **Summary of Complaint:**
  THE CONTACT OWNED A 2012 HYUNDAI SANTA FE. WHILE DRIVING
  APPROXIMATELY 20 MPH, THE CONTACT WAS ALERTED OF FLAMES UNDER
  THE VEHICLE AS BLACK SMOKE POURED FROM THE ENGINE. THE CONTACT
  CRASHED INTO A POLE. THE AIR BAGS DEPLOYED. THE CONTACT RECEIVED
  BRUISES ON THE FACE AND CHEST AND EXPERIENCED TROUBLE
  BREATHING. MEDICAL ATTENTION WAS RECEIVED. A POLICE REPORT WAS
  FILED. THE FIRE DEPARTMENT EXTINGUISHED THE FIRE. THE
  MANUFACTURER WAS NOTIFIED. THE VEHICLE WAS TOWED AND
  DESTROYED. THE APPROXIMATE FAILURE MILEAGE WAS 70,000.

### 3. 2013 Hyundai Santa Fe and Santa Fe Sport

- **Date Complaint Filed:** November 12, 2018
  **Date of Incident:** November 9, 2018
  **Component(s):** ENGINE, FUEL/PROPULSION SYSTEM, WHEELS
  **NHTSA ID Number:** 11150942
  **Consumer Location:** GEORGETOWN, TX
  **Vehicle Identification No. (VIN):** 5XYZU3LB6DG****
  **Summary of Complaint:**
  I OWN A 2013 SANTA FE AND I HAVE HAD SEVERAL ISSUES WITH IT, THE
  ENGINE BEING REPLACED DUE TO FAILING WHILE DRIVING ON THE
  HIGHWAY, IT WAS SERVICED WITH A FEW OTHER ITEMS DEALER FOUND TO
  BE NEEDED FOR SOME RECALLS. BUT NONE I CAN RECALL FOR SURE WAS
  REGARDING THE ENGINE ITSELF, WILL NEED TO CHECK SERVICE RECORDS.
  THEN LATER IT WAS THE FUEL PUMP(INJECTOR) NEED TO VERIFY SPECIFICS,
  BUT GAS FUMES AND SMOKE COMING FROM THE ENGINE AND THIS WAS

REPLACED, THEN LATER AGAIN HAD TO TAKE IN AGAIN FOR REPAIR DUE TO SERVICE ERROR OF TUBING BEING BENT ECT WHEN INSTALLED, NOTICED THE HIGH AMOUNT OF GAS FUMES AND SMOKE FROM THE ENGINE AND INTO THE CABIN. THIS WAS A FEW MONTHS AGO, THEN NOV 9 2018 MY CAR CAUGHT FIRE AND WAS DESTROYED BY FLAMES. I HAD JUST SECONDS TO PULL THE CAR OVER AND PUT IN PARK, GRAB MY 6 YEAR OLD SON AND GET OUT BEFORE FLAMES COVERED THE ENTIRE ENGINE THEN THE ENTIRE CAR. I WAS IN MY NEIGHBORHOOD AND PULLED OVER ON THE SIDE OF THE STREET.

I WOULD LIKE TO START AN INVESTIGATION REGARDING THIS MATTER, I FEAR I AND MY SON COULD HAVE DIED DUE TO THIS KNOWN AND NEGLECTED ISSUE THESE SANTA FES HAVE BEEN HAVING.

- **Date Complaint Filed:** October 16, 2018
  **Date of Incident:** October 13, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11140657
  **Consumer Location:** CHICAGO, IL
  **Vehicle Identification No. (VIN):** 5XYZUDLA0DG****
  **Summary of Complaint:**
  THE CONTACT OWNED A 2013 HYUNDAI SANTA FE. WHILE DRIVING 55 MPH, THE CONTACT NOTICED SMOKE COMING THROUGH THE AIR VENTS. HE THEN OBSERVED FLAMES UNDER THE HOOD. A POLICE REPORT WAS FILED. THE LOCAL FIRE DEPARTMENT EXTINGUISHED THE FIRE. THERE WERE NO INJURIES. THE VEHICLE WAS TOWED TO AN AUTO SHOP WHERE THE CONTACT WAS INFORMED THAT THE VEHICLE WAS A TOTAL LOSS. THE VEHICLE WAS NOT TAKEN TO A DEALER OR AN INDEPENDENT MECHANIC FOR DIAGNOSTIC TESTING. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 58,000.

- **Date Complaint Filed:** October 31, 2018
  **Date of Incident:** October 29, 2018
  **Component(s):** ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11144445
  **Consumer Location:** SAN LUIS OBISPO, CA
  **Vehicle Identification No. (VIN):** 5XYZTDLB3DG****
  **Summary of Complaint:**
  I WAS DRIVING NORTHBOUND ON A FREEWAY TO PICK UP MY 3 YEAR OLD DAUGHTER. MY CAR ENGINE COMPLETELY DIED/STALLED WHILE DRIVING 65MPH. AS SOON AS I TRIED TO GET INTO THE EMERGENCY LANE, I NOTICED SMOKE COMING FROM THE ENGINE. I GRABBED MY PURSE WHICH WAS ON THE PASSENGER SEAT NEXT TO ME, AND I EXITED THE VEHICLE IMMEDIATELY . AS SOON AS I EXITED THE VEHICLE, THE ENTIRE ENGINE AND FRONT OF MY CAR WAS IN FLAMES. THE FIREMAN ARRIVED ON THE SCENE WITHIN 5-10 MINUTES, BUT BY THE TIME THEY HAD GOTTEN THE FIRE OUT, MY ENTIRE CAR WAS TOTALED. I HAD A RECALL ON MY CAR FOR

POSSIBLE ENGINE FAILURE WHILE DRIVING A YEAR AGO, I TOOK MY CAR INTO SACRAMENTO HYUNDAI WHERE THEY TOLD ME THEY HAD FIXED IT, ALONG WITH MULTIPLE OTHER RECALLS ON MY VEHICLE THAT I WAS UNAWARE OF. NOW, A YEAR LATER AFTER HYUNDAI SAID THEY FIXED MY RECALLS, MY CAR STALLED WHILE DRIVING, BUT THIS TIME THE ENTIRE ENGINE CAUGHT FIRE WITH IT, AND THE ENTIRE CAR IS TOTALED. IT WAS THE SCARIEST, MOST TRAUMATIC EXPERIENCE I'VE EVER BEEN THROUGH. IF I DID NOT EXIT THE VEHICLE IMMEDIATELY, I MIGHT NOT HAVE MADE IT OUT SAFELY.

- **Date Complaint Filed:** October 1, 2018
  **Date of Incident:** September 17, 2018
  **Component(s):** ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11132734
  **Consumer Location:** WOODS CROSS, UT
  **Vehicle Identification No. (VIN):** 5XYZWDLA2DG****
  **Summary of Complaint:**
  TWO WEEKS AGO MY 2013 HYUNDAI SANTAFE SPORT TURBO (WHICH I PURCHASED NEW IN 2013) EXPERIENCED AN ENGINE STALL AS I WAS DRIVING ON THE FREEWAY. I WAS ABLE TO COAST TO THE SIDE OF THE ROAD AND THEN EXPERIENCED AN ENGINE FIRE THAT HAS CAUSED EXTENSIVE DAMAGE. THE FIRE WAS EXTINGUISHED AS QUICKLY AS POSSIBLE, BUT NOT BEFORE EXTENSIVE DAMAGE HAD BEEN CAUSED.

  I HAD MY CAR TOWED TO MY LOCAL AUTO SHOP AND THEY HAVE QUOTED THE DAMAGE IN EXCESS OF $2,000 AND INDICATED THAT THEY BELIEVED THE FIRE WAS DUE TO A SHORT IN THE ELECTRICAL SYSTEM. UPON DOING SOME QUICK RESEARCH ON THE INTERNET, IT SEEMS THAT MY EXPERIENCE IS NOT UNCOMMON. I SEE THAT AN OFFICIAL INVESTIGATION WAS OPENED IN JULY 2018, YET THERE HAS NOT BEEN A RECALL YET. IF A RECALL HAD BEEN ISSUED, I WOULD NOT HAVE EXPERIENCED THIS LOSS.

- **Date Complaint Filed:** August 16, 2015
  **Date of Incident:** August 13, 2015
  **Component(s):** ELECTRICAL SYSTEM, FUEL/PROPULSION SYSTEM, ENGINE
  **NHTSA ID Number:** 10748982
  **Consumer Location:** OREGON CITY, OR
  **Vehicle Identification No. (VIN):** 5XYZWDLA4DG****
  **Summary of Complaint:**
  WHEN DRIVING ON THE FREEWAY, VEHICLE LOST POWER AND SHUT OFF, SMELLED AND SAW SMOKE COMING FROM THE VENTS. PULLED TO SIDE OF ROAD AND OPENED HOOD TO CHECK ENGINE AND FLAMES SHOT OUT, CLOSED HOOD AND TRUCKERS RAN OVER WITH FIRE EXTINGUISHERS AND CALLED FIRE DEPARTMENT. WITHIN 5 MINUTES VEHICLE WAS TOTALLY ENGULFED AND FIRE DEPARTMENT HAD ARRIVED AND COULD ONLY PREVENT FLAMES FROM SPREADING TO SURROUNDING ENVIRONMENT. VEHICLE WAS TOTALLY CONSUMED BY THIS CATASTROPHIC FIRE. CALLED HYUNDAI CORPORATE OFFICES IN CALIFORNIA TO REPORT IT AS THE VEHICLE IS UNDER WARRANTY AND WAS ASKED 'WHAT DO YOU WANT US TO DO?'. RECEIVED THE IMPRESSION THAT THEY WERE NOT GOING TO DO ANYTHING ABOUT THIS.

### 4. 2014 Hyundai Santa Fe and Santa Fe Sport

- **Date Complaint Filed:** August 4, 2018
  **Date of Incident:** July 10, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11115741
  **Consumer Location:** MONSON, MA
  **Vehicle Identification No. (VIN):** N/A
  **Summary of Complaint:**
  I PURCHASED USED 2014 HYUNDAI SANTA FE SPORT ON 8/31/2016 WITH
  CASH. IN FEBRUARY 2018 WHILE DRIVING IN HIGH SPEED LANE
  ACCELERATING TO PASS THE RPMS WENT RED AND LOUD BANG, WITH
  SMOKE FILLING CABIN THROUGH VENTS. I WAS ABLE TO CROSS 3 LANES OF
  TRAFFIC RUN AWAY FROM CAR CALLED HYUNDAI 24HR TOWING. THEY
  QUICKLY PICKED ME UP AND CAR GAVE ME KEYS TO LOANER NO
  QUESTIONS ASKED, THEN IN1 WEEK THEY GAVE CAR BACK WITH BRAND
  NEW 2017 ENGINE. I WAS THRILLED. THEN ON JULY 10 DRIVING UP HILL SAW
  SMOKE IN REAR VIEW MIRROR GOING ABOUT 35 MPH. I WENT TO PULL OVER
  AND HEAD HOME BUT BRAKES WENT TO FLOOR AND POWER STEERING WAS
  SHOT. I WHIPPED IT INTO PARK AND LOOKED UP TO ENTIRE WINDSHIELD
  BLOCKED WITH BLACK SMOKE AND ORANGE FLAMES. I GRABBED MY
  PURSE AND COULDN'T GET OUT BECAUSE I HAD FORGOTTEN ABOUT
  SEATBELT. UNDID THAT GRABBED PHONE AND SPRINTED FOR MY LIFE AS
  THERE WERE NUMEROUS EXPLOSIONS. VEHICLE BURNED TO FRAME. IT WAS
  STILL UNDER BUMPER TO BUMPER WARRANTY BUT THE BUMPERS WERE
  GONE! THANKS BE TO GOD THAT MY HANDICAPPED HUSBAND HAD
  DECLINED TO COME WITH ME. I HAD A RENTAL FROM INSURANCE AT NO
  COST, HYUNDAI WANTS ALL PAPERWORK ON CAR WHICH BURNED WITH IT.

- **Date Complaint Filed:** July 24, 2018
  **Date of Incident:** July 17, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11113354
  **Consumer Location:** ARNOLD, MD
  **Vehicle Identification No. (VIN):** 5XYZU3LA0EG****
  **Summary of Complaint:**
  WHILE RETURNING FROM VACATION ON JULY 17, 2018, TRAVELING ON THE
  NEW JERSEY TURNPIKE FROM BOSTON, MA TO ARNOLD, MD, AFTER
  APPROXIMATELY TRAVELING FOR 4 HOURS, WITH A STOP 1 HOUR PRIOR TO
  A REST AREA, WE TOOK EXIT 7A TO PROCEED ONTO I-295 AND THE CAR
  SUDDENLY LOST ALL POWER. PULLED OVER TO THE SIDE, OPENED HOOD,
  SMOKE AND FLAMES COMING FROM THE ENGINE WITH NO WARNING.
  VEHICLE BURNED AND EXPLODED PRIOR TO THE FIRE DEPARTMENT
  ARRIVING. VEHICLE IS TOTALLY GONE AND THERE IS A METAL SHELL, THE
  ENTIRE CAR WAS IN FLAMES AND BURNED UP. THIS HAPPENED VERY
  QUICKLY WITH NO WARNING. CAR HAD APPROXIMATELY 61,000 MILES,
  EXTENDED WARRANTY, AND ALL REQUIRED MAINTENANCE HAD BEEN
  PERFORM BY THE LOCAL HYUNDAI DEALER IN ANNAPOLIS, MD.

- **Date Complaint Filed:** July 3, 2018
  **Date of Incident:** June 28, 2018
  **Component(s):** STRUCTURE, ENGINE, FUEL/PROPULSION SYSTEM
  **NHTSA ID Number:** 11105401
  **Consumer Location:** ARROYO GRANDE, CA
  **Vehicle Identification No. (VIN):** 5XYZU3LA7EG****
  **Summary of Complaint:**
  AFTER DRIVING THE VEHICLE 15 MILES ON THE HIGHWAY, WE DROVE ON
  RESIDENTIAL STREET FOR ABOUT 1.5 MILES. AS I WAS TURNING INTO A
  PARKING STRUCTURE THE ENGINE STOPPED AND THE VEHICLE LOST
  POWER. I GLIDED THE VEHICLE TO A RED ZONE NO PARKING AREA ON THE
  STREET AND STOPPED THE VEHICLE. BLACK SMOKE QUICKLY APPEARED
  FROM UNDER THE HOOD AND FLAMES QUICKLY APPEARED. THE FRONT OF
  THE VEHICLE SOON BECAME ENGULFED IN FLAMES SHOOTING 4-6 FEET
  HIGH. THE FIRE DEPARTMENT ARRIVED AND SPRAYED THE FRONT OF THE
  VEHICLE WITH A FOAM FIRE RETARDANT. THEN THEY CUT THE HOOD
  LATCH AND OPEN THE HOOD. THE ENTIRE ENGINE COMPARTMENT,
  WINDSHIELD AND THE FRONT PASSENGER AREA WERE COMPLETELY
  DESTROYED. THE VEHICLE WAS MELTED TO THE STREET AND THE TOW
  DRIVER HAD TO SMASH IT LOOSE.

49.    There are similar complaints for the 2011-2014 Kia Sorento:

       1.    <u>**2011 Kia Sorento**</u>

- **Date Complaint Filed:** October 5, 2018
  **Date of Incident:** September 14, 2018
  **Component(s):** STRUCTURE, ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11133458
  **Consumer Location:** CLEVELAND, GA
  **Vehicle Identification No. (VIN):** 5XYKT3A11BG****
  **Summary of Complaint:**
  VEHICLES CAUGHT FIRE, HAD PULLED IN THE PARKING LOT AT WORK AND
  SMOKE BEGAN TO COME FROM UNDER THE HOOD ON THE VEHICLE. WITHIN
  SECONDS FLAMES HAD ERUPTED AND FRONT END OF CAR WAS
  COMPLETELY ENGULFED BY THE TIME THE FIRE DEPARTMENT HAD
  ARRIVED. VEHICLE WAS A TOTAL LOSS.

- **Date Complaint Filed:** September 10, 2018
  **Date of Incident:** September 10, 2018
  **Component(s):** STRUCTURE, ENGINE
  **NHTSA ID Number:** 11128568
  **Consumer Location:** ATGLEN, PA
  **Vehicle Identification No. (VIN):** 5XYKU4A23BG****
  **Summary of Complaint:**

MY WIFE WAS DRIVING DOWN THE STREET WHEN THE CAR SUDDENLY LOCKED UP(STOPPED) AND THE ENGINE SHUT OFF. SHE NOTICED SMOKE COMING FROM UNDER THE HOOD AND THEN WITHIN MINUTES THE ENGINE WAS IN COMPLETE FLAMES. PRIOR TO THIS THERE WHERE NEVER ANY SIGNS OF THE CAR RUNNING OR DRIVING LIKE THERE WHERE GOING TO BE PROBLEMS. I'VE NEVER HAD ANY MECHANICAL ISSUES AT ALL ASIDE FROM THIS INCIDENT. THIS HAS COME COMPLETELY OUT OF NOWHERE UNEXPECTEDLY.

- **Date Complaint Filed:** July 28, 2018
  **Date of Incident:** June 27, 2018
  **Component(s):** STRUCTURE, ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11114289
  **Consumer Location:** FORT WORTH, TX
  **Vehicle Identification No. (VIN):** 5XYKT3A1XBG****
  **Summary of Complaint:**
  AFTER DRIVING ABOUT 6 MILES TO A LOCAL STORE NEARBY AND BACK HOME AS I PULLED MY CAR INTO MY PARKING SPOT BLACK SMOKE STARTED COMING FROM THE HOOD SO I TURNED THE CAR OFF WAITED UNTIL THE SMOKE STOPPED AND LOOKED UNDER THE HOOD TO SEE IF I COULD TELL WHAT WAS SMOKING. EVERYTHING APPEARED FINE AND I MADE SURE TO CHECK ALL OF MY FLUID LEVELS AND OIL WHICH WERE ALL FULL. LATER THAT DAY MAYBE 4 HOURS LATER I DROVE ABOUT 15 MILES TO MY SISTERS HOUSE AND AGAIN AS I WAS PARKING MY CAR THE BLACK SMOKE STARTED AGAIN FROM UNDER THE HOOD. I PROCEEDED TO TURN THE CAR OFF AND LOOK UNDER THE HOOD AGAIN AFTER THE SMOKE CLEARED. LESS THAN 5 MINUTES LATER THE WAS **A LOUD POPPING NOISE FROM UNDER THE HOOD AND BY THE TIME I RAN OUTSIDE TO SEE THE ENTIRE FRONT PART OF MY CAR WAS ENGULFED IN FLAMES** HOWEVER THE WINDOWS WERE UP SO THE FLAMES WERE CONTAINED INSIDE THE CAR AND UNDER THE HOOD. THE FIRE DEPARTMENT CAME MINUTES LATER AND PUT THE FIRE OUT AND I HAD TO HAVE THE CAR TOWED DUE TO THE FRONT TIRES MELTING FROM THE FIRE. I HAD IT TOWED BACK TO THE DEALERSHIP WHERE I'D PURCHASED IT ONLY 5 MONTHS BEFORE AND LET THEM AND FINANCING COMPANY KNOW. NO ONE COULD EXPLAIN WHY MY CAR SPONTANEOUSLY COMBUSTED LIKE A BOMB WHILE PARKED AND TURNED OFF. I'M REPORTING THIS INCIDENT BECAUSE I DO NOT BELIEVE IT WAS A FREAK ACCIDENT I BELIEVE THESE VEHICLES SHOULD DEFINITELY BE INVESTIGATED BEFORE SOMEONE LOSES THEIR LIFE.

- **Date Complaint Filed:** June 26, 2018
  **Date of Incident:** March 14, 2018
  **Component(s):** ELECTRICAL SYSTEM, EXTERIOR LIGHTING
  **NHTSA ID Number:** 11104031
  **Consumer Location:** PHOENIX, AZ
  **Vehicle Identification No. (VIN):** 5XYKW4A23BG****
  **Summary of Complaint:**

LOW BEAM HEADLAMPS ARE FAILING DUE TO WIRING HARNESS MELTING CAUSING A SHORT. THIS A SAFETY ISSUE FOR VISIBILITY AT NIGHT AND COULD START A FIRE IN THE ENGINE COMPARTMENT. THIS PROBLEM WAS IDENTIFIED WHEN DRIVING ON THE I-17 IN NORTH PHOENIX AND VERIFIED ONCE WE GOT HOME. THE HARNESS WAS REPLACED BY A CERTIFIED MECHANIC TWICE AND BOTH TIMES THE HARNESS MELTED. OE HEADLAMPS ARE BEING USED.CURRENTLY, WE HAVE NO DRIVER SIDE HEADLAMP DUE TO A CONCERN FOR FIRE.

- **Date Complaint Filed:** November 28, 2014
  **Date of Incident:** November 23, 2014
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10661186
  **Consumer Location:** INDIANAPOLIS, IN
  **Vehicle Identification No. (VIN):** 5XYKTDA27BG****
  **Summary of Complaint:**
  OUR KIA WENT UP IN FLAMES LAST SUNDAY. IT HAD BEEN IN THE SHOP ON THURSDAY BEFORE.

- **Date Complaint Filed:** April 1, 2014
  **Date of Incident:** December 1, 2011
  **Component(s):** EXTERIOR LIGHTING
  **NHTSA ID Number:** 10576555
  **Consumer Location:** WILLIS, TX
  **Vehicle Identification No. (VIN):** N/A
  **Summary of Complaint:**
  I EXPERIENCED REPEATED HEADLAMPS BULBS BURNING OUT. . . .  HAVE HAD 3 LOW BEAM HEADLIGHTS BLOW OVER THE PAST COUPLE OF MONTHS. TODAY THE DEALERSHIP TOLD ME THAT IT WAS CAUSED BY A SHORT IN THE HEADLAMP ASSEMBLY TO THE TUNE OF A $400 PART AND ABOUT $250 LABOR. NOT COVERED BY THE MAXIMUM WRAP COVERAGE EXTENDED WARRANTY. ARGHH! HAVE NO CHOICE BUT TO HAVE IT FIXED, BUT NEVER WILL I BUY ANOTHER KIA.

    2.    <u>2012 Kia Sorento</u>
- **Date Complaint Filed:** October 4, 2018
  **Date of Incident:** October 2, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11133319
  **Consumer Location:** MAINEVILLE, OH
  **Vehicle Identification No. (VIN):** 5XYKW4A26CG****
  **Summary of Complaint:**
  VEHICLE ENGINE CAUGHT FIRE WITH NO WARNING WHILE DRIVING ON A HIGHWAY TURNING ONTO AN INTERSECTION AT NIGHT , BURST INTO FLAMES, POWER STEERING, BRAKES AND ELECTRICAL WENT OUT AS WELL , VEHICLE WAS ENGULFED IN FLAMES INSTANTLY AND WAS DECLARED A TOTAL LOSS.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- **Date Complaint Filed:** September 12, 2018
  **Date of Incident:** October 7, 2017
  **Component(s):** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11128846
  **Consumer Location:** RAVEN, VA
  **Vehicle Identification No. (VIN):** 5XYKTDA65CG****
  **Summary of Complaint:**
  2012 KIA SORENTO WAS SERVICED AT DEALERSHIP ON REGULAR BASIS.
  OCTOBER 7, 2017 CAUGHT FIRE AND BURNT TO THE GROUND. CALLED KIA
  AND THEY WOULD DO NOTHING! STATED THEY DID NOT DEAL WITH
  CONSUMERS AND TO DEAL WITH MY INSURANCE. INSURANCE ONLY PAID
  BOOK VALUE AND WAS UNABLE TO PURCHASE A VEHICLE WITH THAT
  AMOUNT! I DID EVERYTHING BY THE BOOK AND KEPT MY KIA IN
  EXCELLENT SHAPE AND THEY DID NOT STAND BEHIND THEIR PRODUCT! I
  HAD A APPOINTMENT TO SERVICE ON MONDAY AND IT BURNT ON
  SATURDAY! I FOUND OUT THAT THEY HAD ISSUED A RECALL AND I AM
  SURE THAT THE DEALERSHIP WOULD HAVE TAKEN CARE OF IT AT SERVICE (
  I DID NOT RECEIVE A RECALL NOTICE). MY NIECE WAS DRIVING FROM
  KENTUCKY TO MY HOME IN VIRGINIA (HER VEHICLE WAS BROKE DOWN
  AND THE DRIVE WAS A HOUR AWAY). THE VEHICLE STARTED MAKING A
  NOISE AT WHICH TIME SHE PULLED OFF THE ROAD AND THEN THE VEHICLE
  DIED AND STARTED SMOKING. IT WAS NIGHT TIME AND SHE CALLED ME
  AND I STARTED ON MY WAY TO MEET HER. SHE EXITED THE VEHICLE AND
  WENT TO RAISE THE HOOD BUT TWO GUYS HAD STOPPED TO SEE IF THEY
  COULD HELP AND ONE SEEN THE RED OF THE FIRE IN THE CRACK OF THE
  HOOD AND ADVISED HER TO GET AWAY. WITHIN SECONDS FLAMES
  ENGULFED THE INSIDE OF THE VEHICLE AND BURNT COMPLETELY BY THE
  TIME THE FIRE DEPARTMENT ARRIVED. THE FIRE CHIEF TOLD ME WHEN I
  ARRIVED THAT IT WAS DEFINITELY ELECTRICAL. WE WERE BLESSED THAT
  MY NIECES 6 MONTH OLD WAS WITH ME AND NOT IN THE VEHICLE WITH
  HER BECAUSE SHE WOULD NOT HAVE BEEN ABLE TO GET HER OUT! VERY
  DISAPPOINTED IN KIA AND I WAS A HUGE FAN BUT NOT ANYMORE AFTER
  DEALING WITH CUSTOMER SERVICE! I DO NOT FEEL IT IS FAIR THEY ARE
  NOT HELD RESPONSIBLE FOR THEIR PRODUCT! THEY WOULD NOT HELP ME
  AT ALL!

- **Date Complaint Filed:** September 29, 2018
  **Date of Incident:** September 8, 2018
  **Component(s):** ELECTRICAL SYSTEM, ENGINE, STEERING
  **NHTSA ID Number:** 11132280
  **Consumer Location:** DALLAS, TX
  **Vehicle Identification No. (VIN):** 5XYKT3A60CG****
  **Summary of Complaint:**
  THIS KIA SORENTO CAUGHT FIRE WHILE BEING DRIVEN. THE DRIVER
  REPORTED THAT THE STEERING LOCKED UP AND SHE COULD SEE SMOKE
  AND A FLAME COMING FROM THE ENGINE.

SHE LEFT THE VEHICLE UNHARMED HOWEVER THE EXPERIENCE WAS
FRIGHTENING. THE FRONT END OF THE VEHICLE WAS ENGULFED IN FLAMES
AND THE CAR IS NOW A TOTAL LOSS.

- **Date Complaint Filed:** March 19, 2016
  **Date of Incident:** February 21, 2016
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10850516
  **Consumer Location:** ADGER, AL
  **Vehicle Identification No. (VIN):** 5XYKT3A10CG****
  **Summary of Complaint:**
  I WAS DRIVING ABOUT 60 MPH DOWN 269 HIGHWAY WHEN ALL AT ONCE I
  HEARD A LOUD POP LIKE SOUND AND THEN SMOKE STARTED GOING OUT
  THE TAIL PIPE AND THEN UNDER THE HOOD THE CAR LOST ALL POWER AND
  STOPPED. I GOT OUT AND RASISED THE HOOD AND IT WAS ON FIRE .
  LUCKELY SOMEONE ONE WAS BEHIND ME AND HAD A FIRE EXSTINQUER
  AND PUT IT OUT. CALLED POLICE THEY WOULD NOT COME OUT CALLED
  INSURANCE AND THEY SENT A TOW TRUCK. WE BOUGHT THIS CAR BRAND
  NEW IN 2011 AND ALWAYS KELPT IT SERVICED, THEY TOOK IT TO THE KIA
  LOT WE BOUGHT IT FROM AND SAID IT WAS A FIRE IN THE BOTTOM OF THE
  ENGINE AND IT WOULD COST $10,000 TO FIX IT WE WERE STILL PAYING ON
  IT. SO THE INSURANCE CALLED IT A LOSS. NOW WE ARE OUT CAR AND NO
  MONEY TO BOOT. I HAD JUST TOOK MY GRANDBABY HOME IT COULD OF
  BEEN REALLY BAD.

- **Date Complaint Filed:** March 27, 2014
  **Date of Incident:** February 13, 2013
  **Component(s):** ENGINE, EXTERIOR LIGHTING
  **NHTSA ID Number:** 10575061
  **Consumer Location:** MOBILE, AL
  **Vehicle Identification No. (VIN):** N/A
  **Summary of Complaint:**
  I HAVE A 2012 SORENTO THAT HAS BEEN NOTHING BUT A CONSTANT
  HEADACHE. JUST SOME MINOR ISSUES HAVE BEEN A HEADLIGHT THAT
  CONTINUOUSLY HAS TO BE REPLACED BECAUSE OF A SHORT THAT THEY
  SERVICE DEPARTMENT CAN'T GET TO THE BOTTOM OF. . . .

    3.    **2013 Kia Sorento**
- **Date Complaint Filed:** November 3, 2018
  **Date of Incident:** November 3, 2018
  **Component(s):** ELECTRICAL SYSTEM, EXTERIOR LIGHTING
  **NHTSA ID Number:** 11145097
  **Consumer Location:** STATEN ISLAND, NY
  **Vehicle Identification No. (VIN):** 5XYKTDA20DG****
  **Summary of Complaint:**
  HEADLIGHTS BURN OUT, REPLACED SEVERAL TIMES AND EVEN BURNS OUT
  SAME DAY, SOME PART OF HEADLIGHT, LIGHTBULB ATTACHMENT ALSO
  MELTED AND WAS REPLACED SEVERAL TIMES. BROUGHT CAR TO

DIFFERENT MECHANICS REGARDING ISSUE AND ALL REPLY ITS AN
ELECTRICAL ISSUE WITH MANY KIA SORENTOS, BUT WHEN YOU CALL KIA
THEY SAY ITS NOT THEIR PROBLEM. ALSO, DRIVER HEATED SEAT STOPPED
WORKING, MECHANICS UNABLE TO FIND ISSUE SAID IT WAS ELECTRICAL
SHORT, THEN SEAT WENT ON BY ITSELF AND WAS UNABLE TO TURN IT OFF,
SEAT BECAME SEVERELY TOO HOT TO DRIVE CAR. LIGHTS BLEW OUT
WHILE DRIVING, SOMETIMES WHILE CAR WAS JUST TURNED OFF, PARKED
IN FRONT OF MY HOUSE AND EVEN ONCE RIGHT AWAY AT THE MECHANICS.
AND MOST RECENTLY, ISSUE WITH BATTERY. REPLACED BATTERY AFTER
CAR WOULDNT START, STILL HAD ISSUES, REPLACED ALTERNATOR, STILL
HAD PROBLEMS. REPLACED CONNECTORS. ITS RIDICULOUS. AND LIGHTS
STILL GO OUT AND MELT.

- **Date Complaint Filed:** October 23, 2018
  **Date of Incident:** September 1, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11142172
  **Consumer Location:** CANAL WINCHESTER, OH
  **Vehicle Identification No. (VIN):** 5XYKT3A66DG****
  **Summary of Complaint:**
  THE CONTACT OWNED A 2013 KIA SORENTO. WHILE THE VEHICLE WAS
  PARKED, IT CAUGHT ON FIRE. THE VEHICLE WAS DESTROYED.

- **Date Complaint Filed:** September 11, 2018
  **Date of Incident:** May 3, 2018
  **Component(s):** AIR BAGS, ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11128790
  **Consumer Location:** SAHUARITA, AZ
  **Vehicle Identification No. (VIN):** N/A
  **Summary of Complaint:**
  DRIVING DOWN THE HIGHWAY AND CAR COUGHT FIRE. IF IT WASN'T FOR
  THE CAR NEXT TO US WHO SIGNALED TO PULL OVER WE WOULD HAVE
  BEEN TOAST.

- **Date Complaint Filed:** August 13, 2018
  **Date of Incident:** August 12, 2018
  **Component(s):** STRUCTURE, ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11119545
  **Consumer Location:** DAVENPORT, FL
  **Vehicle Identification No. (VIN):** N/A
  **Summary of Complaint:**
  SPONTANEOUS VEHICLE FIRE. TRAVELING ON US-27 IN FLORIDA, STOPPED
  AT RED LIGHT AND SMOKE STARTED COMING OUT FROM UNDER THE HOOD,
  PROCEEDED THROUGH THE LIGHT ONCE IT TURNED GREEN TO GET TO THE
  SIDE OF THE ROADWAY WHEN SMOKE STARTED THROUGH THE VENTS AND
  FLAMES CAME OUT FROM UNDER THE HOOD AS WELL. CAR BECAME
  DISABLED AND 3 OF US JUMPED OUT AND RAN DOWN THE ROAD, AWAY

FROM THE CAR. THE ENTIRE CAR WENT UP IN FLAMES IN A MATTER OF
SECONDS FROM EXITING.

- **Date Complaint Filed:** March 3, 2017
  **Date of Incident:** February 14, 2017
  **Component(s):** ENGINE, POWER TRAIN
  **NHTSA ID Number:** 10958524
  **Consumer Location:** Unknown
  **Vehicle Identification No. (VIN):** N/A
  **Summary of Complaint:**
  HE CAR WAS BEING DRIVEN AND CAUGHT FIRE ON RURAL ROADS ABOUT
  50MPH.THE DOG AND MY SIGNIFICANT OTHER WERE ABLE TO GET OUT OF
  THE VEHICLE AND MY S.O.'S QUICK THINKING...SNOW IN THE ENGINE
  HELPED EXTINGUISH THE FLAMES. . . .

### 4.    2014 Kia Sorento

- **Date Complaint Filed:** August 13, 2018
  **Date of Incident:** August 3, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11119577
  **Consumer Location:** ATLANTA, GA
  **Vehicle Identification No. (VIN):** 5XYKT3A63EG****
  **Summary of Complaint:**
  THE CONTACT OWNED A 2014 KIA SORENTO. THE CONTACT STATED THAT
  WHEN THE ENGINE WAS TURNED OFF, SMOKE WAS SEEN COMING FROM
  UNDER THE HOOD OF THE VEHICLE. THERE WAS NO WARNING INDICATOR
  ILLUMINATED. THE VEHICLE THEN BURST INTO FLAMES. THE FIRE
  DEPARTMENT WAS CALLED AND EXTINGUISHED THE FIRE. A POLICE
  REPORT WAS FILED AND THERE WERE NO INJURIES. THE VEHICLE WAS
  DESTROYED AND TOWED TO A TOW LOT. THE VEHICLE WAS NOT TAKEN TO
  A DEALER OR AN INDEPENDENT MECHANIC FOR DIAGNOSTIC TESTING OF
  THE FAILURE. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE.
  THE APPROXIMATE FAILURE MILEAGE WAS 81,000.

- **Date Complaint Filed:** July 19, 2018
  **Date of Incident:** July 19, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11112455
  **Consumer Location:** NORTH WHITE PLAINS, NY
  **Vehicle Identification No. (VIN):** 5XYKWDA74EG****
  **Summary of Complaint:**
  I WAS DRIVING MY CAR HOME AND JUST AS I PULLED UP ON MY STREET I
  AND BEGAN TO SMELL SMOKE AND THE SMELL OF BURNING PLASTIC, JUST
  AS I WAS PULLING UP TO MY HOUSE AND ABOUT TO PULL INTO MY
  DRIVEWAY, A TOW TRUCK DRIVER DRIVING THE OPPOSITE DIRECTION
  STOPPED HIS TRUCK, JUMPED OUT AND STARTED YELLING FOR ME TO GET
  OUT OF THE CAR BECAUSE MY ENGINE WAS ON FIRE. AT THIS TIME I

TURNED THE CAR OFF, GRABBED MY THINGS AND JUMPED OUT OF THE CAR. FLAMES WERE COMING OUT THE BOTTOM OF THE ENGINE AND SMOKE WAS COMING FROM THE CREASE IN THE HOOD COVERING THE ENGINE. AFTER A FEW MINUTES THE TOW TRUCK DRIVER OPENED THE HOOD AND THE ENGINE WAS STILL ON FIRE. HE GRABBED A FIRE EXTINGUISHER THAT HE HAD IN HIS TRUCK AND PUT OUT THE FIRE.

- **Date Complaint Filed:** April 25, 2018
  **Date of Incident:** April 21, 2018
  **Component(s):** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11090119
  **Consumer Location:** SANTA ROSA BEACH, FL
  **Vehicle Identification No. (VIN):** 5XYKT3A64EG****
  **Summary of Complaint:**
  I WAS DRIVING DOWN THE INTERSTATE AS I HEARD A LOUD POP SO PULLED OVER ON THE SIDE OF THE ROAD THINKING IT WAS MY TIRES, AS I LOOKED AT ALL THE TIRES I DIDN'T SEE ANYTHING SO I GOT BACK IN. SOON AS I GOT BACK IN THE VEHICLE I SMELLED SOMETHING SO I TURNED THE CAR OFF AND GOT OUT. THE MINUTE I GOT OUT OF THE CAR IT ENGULFED IN FLAMES.. THE FIRE REPORT SHOWED IT WAS DUE TO AN ELECTRICAL ISSUE , AND THE ENTIRE CAR BURNT UP

- **Date Complaint Filed:** March 10, 2016
  **Date of Incident:** February 18, 2016
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10846035
  **Consumer Location:** DURHAM, NC
  **Vehicle Identification No. (VIN):** 5XYKT4A64EG****
  **Summary of Complaint:**
  THE CONTACT OWNS A 2014 KIA SORENTO. WHILE DRIVING 60 MPH, THERE WAS A LOUD ABNORMAL NOISE AND THE PRESENCE OF SMOKE EMITTED OUTSIDE AND INSIDE THE VEHICLE. UPON FURTHER INSPECTION, THE CONTACT LIFTED THE HOOD AND NOTICED FLAMES NEAR THE MOTOR. THE VEHICLE WAS COASTED OVER TO THE SIDE OF THE ROAD. THE FIRE DEPARTMENT EXTINGUISHED THE FLAMES. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED TO A DEALER, BUT WAS NOT DIAGNOSED. THE VEHICLE WAS PARKED AT THE DEALER'S FOR WEEKS. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE, BUT IT WAS UNCERTAIN AS TO WHEN THEY WOULD INVESTIGATE THE FAILURE AND PROVIDE A PERMANENT REMEDY. THE APPROXIMATE FAILURE MILEAGE WAS 31,000.

50.   There are similar complaints for the 2011-2014 Kia Optima:

#### 1.   2011 Kia Optima

- **Date Complaint Filed:** November 9, 2018
  **Date of Incident:** October 19, 2018

**Component(s):** ENGINE
**NHTSA ID Number:** 11150291
**Consumer Location:** OKMULGEE, OK
**Vehicle Identification No. (VIN):** KNAGN4A73B5\*\*\*\*
**Summary of Complaint:**
THE CONTACT OWNS A 2011 KIA OPTIMA. WHILE DRIVING 40 MPH, THE
VEHICLE STALLED. THE CONTACT OPENED THE HOOD AND FLAMES
APPEARED UNDERNEATH THE INTAKE MANIFOLD. THE LOCAL FIRE
DEPARTMENT EXTINGUISHED THE FIRE. THE VEHICLE WAS TOWED TO AN
INDEPENDENT MECHANIC WHERE THE CONTACT WAS INFORMED THAT THE
WIRING HARNESS WAS BURNT. THE VEHICLE WAS NOT TAKEN TO A DEALER
FOR DIAGNOSTIC TESTING OR REPAIRS. THE MANUFACTURER WAS NOT
MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 89,000.

- **Date Complaint Filed:** September 12, 2018
  **Date of Incident:** November 23, 2016
  **Component(s):** STRUCTURE, ENGINE
  **NHTSA ID Number:** 11129096
  **Consumer Location:** NITRO, WV
  **Vehicle Identification No. (VIN):** KNAGM4A73B5\*\*\*\*
  **Summary of Complaint:**
  MY HUSBAND WAS DRIVING A 2011 KIA OPTIMA WHEN THE CAR VEERED
  OFF THE ROAD AND BURST INTO FLAMES. MY HUSBAND WAS KILLED UPON
  IMPACT WITH A TREE.

- **Date Complaint Filed:** August 6, 2018
  **Date of Incident:** March 19, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11115903
  **Consumer Location:** RUSKIN, FL
  **Vehicle Identification No. (VIN):** KNAGN4A69B5\*\*\*\*
  **Summary of Complaint:**
  THE CONTACT OWNS A 2011 KIA OPTIMA. WHILE DRIVING APPROXIMATELY
  65 MPH, THE VEHICLE STALLED AND BLACK SMOKE EMERGED FROM THE
  ENGINE COMPARTMENT. IN ADDITION, THE CHECK ENGINE AND TIRE
  PRESSURE WARNING INDICATORS ILLUMINATED. THE CONTACT PULLED
  OVER, EXITED THE VEHICLE, AND NOTICED FLAMES UNDER THE HOOD. THE
  CONTACT USED A TOWEL AND A BOTTLE OF WATER TO EXTINGUISH THE
  FIRE. THE FIRE DEPARTMENT WAS CALLED, BUT ARRIVED AFTER THE FIRE
  WAS EXTINGUISHED. THE VEHICLE WAS TOWED TO THE DEALER
  (COURTESY KIA OF BRANDON, 9205 E ADAMO, TAMPA, FL 33619) WHERE IT
  WAS DIAGNOSED THAT THE ENGINE BLOCK FAILED AND THE ENGINE
  NEEDED REPLACEMENT. THE CONTACT ALSO MENTIONED THAT THE
  VEHICLE WAS AT THE DEALER FOR AN EVALUATION PER NHTSA CAMPAIGN
  NUMBER: 17V224000 (ENGINE AND ENGINE COOLING). THE DEALER STATED
  THAT IT WAS OK TO DRIVE THE VEHICLE. THE MANUFACTURER WAS
  NOTIFIED OF THE FAILURE AND CASE NUMBER: 12673181 WAS OPENED. THE

VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS
78,000.

- **Date Complaint Filed:** October 16, 2014
  **Date of Incident:** October 12, 2014
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10645013
  **Consumer Location:** MELBOURNE, FL
  **Vehicle Identification No. (VIN):** KNAGN4A61B5****
  **Summary of Complaint:**
  THE CONTACT OWNS A 2011 KIA OPTIMA. THE CONTACT STATED THAT
  WHILE DRIVING 75 MPH AT NIGHT WITH THE CRUISE CONTROL ACTIVATED,
  THERE WAS SMOKE COMING FROM UNDER THE HOOD AND THE VEHICLE
  ENGULFED INTO FLAMES. THE FIRE DEPARTMENT EXTINGUISHED THE FIRE.
  A POLICE/FIRE REPORT WAS FILED AND THERE WERE NO INJURIES
  REPORTED. THE VEHICLE WAS DESTROYED AND THE CAUSE OF THE FIRE
  WAS NOT DETERMINED. THE MANUFACTURER WAS NOT MADE AWARE OF
  THE FAILURE. THE FAILURE MILEAGE WAS 51,500.

### 2.   2012 Kia Optima

- **Date Complaint Filed:** October 15, 2018
  **Date of Incident:** April 8, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11140474
  **Consumer Location:** GREENVILLE, SC
  **Vehicle Identification No. (VIN):** N/A
  **Summary of Complaint:**
  THE CONTACT OWNED A 2012 KIA OPTIMA. WHILE DRIVING 65 MPH, THE
  VEHICLE STALLED AND COMPLETELY SHUT OFF. ALSO, THE CONTACT
  HEARD AN ABNORMAL NOISE UNDER THE HOOD WITHOUT WARNING. THE
  VEHICLE WAS TOWED TO THE CONTACT'S RESIDENCE AND THEN TAKEN TO
  KIA OF GREENVILLE (2424 LAURENS RD, GREENVILLE, SC 29607, (864) 516-
  2700) WHERE IT WAS DIAGNOSED THAT THE ENGINE NEEDED TO BE
  REPLACED. THE DEALER STATED THAT THE VIN WAS INCLUDED IN NHTSA
  CAMPAIGN NUMBER: 17V224000 (ENGINE AND ENGINE COOLING). THE
  VEHICLE WAS REPAIRED. **AFTER THE ENGINE WAS REPLACED, FLAMES
  WERE DETECTED UNDER THE HOOD OF THE VEHICLE. A POLICE REPORT
  WAS FILED. THE FIRE DEPARTMENT EXTINGUISHED THE FIRE**. THERE
  WERE NO INJURIES SUSTAINED. THE VEHICLE WAS TOWED TO A LOCAL TOW
  LOT AND DECLARED A TOTAL LOSS. THE VEHICLE WAS NOT TAKEN TO A
  DEALER OR INDEPENDENT MECHANIC FOR DIAGNOSTIC TESTING OR
  REPAIRS. THE MANUFACTURER WAS MADE AWARE OF THE FAILURES. THE
  VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 141,000.

- **Date Complaint Filed:** September 26, 2014
  **Date of Incident:** September 11, 2014
  **Component(s):** ENGINE

**NHTSA ID Number:** 10639417
**Consumer Location:** NEWMAN, CA
**Vehicle Identification No. (VIN):** N/A
**Summary of Complaint:**
THE CONTACT OWNS A 2012 KIA OPTIMA. THE CONTACT STATED THAT WHILE DRIVING AT APPROXIMATELY 70 MPH, THE ENGINE STALLED WITHOUT WARNING. IN ADDITION, A STRONG ELECTRICAL BURNING ODOR EMITTED INSIDE OF THE VEHICLE. THE VEHICLE WAS TOWED TO A DEALER FOR DIAGNOSIS. THE MECHANIC INFORMED THAT THE STARTER AND ASSOCIATED FUSES WERE COMPLETELY BURNT. THE VEHICLE WAS REPAIRED. THE CONTACT STATED THAT AFTER THE REPAIRS WERE PERFORMED, THE VEHICLE FAILED TO START. THE VEHICLE WAS TAKEN BACK TO THE DEALER WHO RECOMMENDED THE ENGINE NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VIN WAS UNAVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 55,000.

### 3.   2013 Kia Optima

- **Date Complaint Filed:** October 30, 2018
  **Date of Incident:** October 28, 2018
  **Component(s):** ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11144208
  **Consumer Location:** MODESTO, CA
  **Vehicle Identification No. (VIN):** 5XXGN4A72DG****
  **Summary of Complaint:**
  WHILE ON THE FREEWAY AT APPROXIMATELY 75 MILES PER HOUR MY VEHICLE [2013 Kia Optima] STARTED SMOKING OUT THE REAR END AND LOST ALL POWER. WHEN I PULLED ONTO THE SHOULDER AND STOPPED, FLAMES CAME FROM UNDER THE HOOD TOWARDS THE WINDSHIELD. MY VEHICLE CONTINUED TO BURN UNTIL THE FIRE DEPARTMENT ARRIVED AND EXTINGUISHED THE FLAMES. **ONCE EXTINGUISHED THE FIRE CAPTAIN SAID IN HIS EXPERIENCE THIS APPEARED TO HAVE BEEN AN ELECTRICAL ISSUE.** KIA ALSO HAS CLAIMS ABOUT SPONTANEOUS FIRES IN SEVERAL MODELS INCLUDING MINE DUE TO METAL SHAVINGS FROM THE FACTORY IN THE OIL CAUSING A FIRE.

- **Date Complaint Filed:** October 25, 2018
  **Date of Incident:** September 16, 2018
  **Component(s):** STRUCTURE, ENGINE, UNKNOWN OR OTHER
  **NHTSA ID Number:** 11142750
  **Consumer Location:** Unknown
  **Vehicle Identification No. (VIN):** NA****
  **Summary of Complaint:**
  ON SEPTEMBER 16, 2018 AT APPROXIMATELY 930AM, WHILE ON DUTY AT WORK (CORRECTION OFFICER) MY KIA OPTIMA GDI 2013 WENT UP IN FLAMES IN THE PARKING LOT OF MY JOB.[] I WAS NOT PRESENT AND THE VEHICLE. I HAD ALREADY BEEN ON DUTY 530AM THAT MORNING. ONCE I

MADE IT TO THE SCENE MY CAR WAS COMPLETELY ALMOST BURNT TO THE GROUND. THE FIRE DEPARTMENT LABELED IT AS A ELECTRICAL FIRE, WHICH CAUSED THE CAR THE BURN FROM THE INSIDE OUT, STARTING FROM THE ENGINE. I HAD SEVERAL PERSONAL ITEMS OF MINE BURNT IN THE FIRE AND ALSO WORK EQUIPMENT THAT WAS LOST IN THE FIRE. SINCE THE INCIDENT I'VE SUFFERED MENTAL, EMOTIONAL AND PHYSICAL DISTRESS. I'M A SINGLE MOTHER AND I DEPENDED ON MY CAR TO GET ME WHERE I NEEDED TO GO. THINGS HAVE BEEN VERY FRUSTRATING AND HARD. I'M SEEKING HELP FROM KIA MOTORS.

- **Date Complaint Filed:** October 22, 2018
  **Date of Incident:** September 25, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11141807
  **Consumer Location:** RIVERDALE, GA
  **Vehicle Identification No. (VIN):** 5XXGM4A73DG****
  **Summary of Complaint:**
  THE CONTACT OWNED A 2013 KIA OPTIMA. WHILE DRIVING APPROXIMATELY 60 MPH AND ATTEMPTING TO SLOW DOWN, SMOKE APPEARED UNDERNEATH THE HOOD. THE VEHICLE WAS PULLED OVER TO THE SIDE OF THE ROAD. THE CONTACT HEARD A POPPING SOUND AND THE VEHICLE IMMEDIATELY BURST INTO FLAMES. THE FIRE DEPARTMENT WAS CALLED AND EXTINGUISHED THE FIRE. THE VEHICLE WAS TOWED TO A TOW YARD AND DEEMED DESTROYED. THE DEALER WAS NOT CALLED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND STATED THAT THE MATTER WOULD BE INVESTIGATED. THE CONTACT WAS NOT CALLED BACK. THE FAILURE MILEAGE WAS APPROXIMATELY 124,000.

- **Date Complaint Filed:** October 15, 2018
  **Date of Incident:** September 1, 2018
  **Component(s):** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 11140395
  **Consumer Location:** OREM, UT
  **Vehicle Identification No. (VIN):** 5XXGR4A68DG****
  **Summary of Complaint:**
  THIS VEHICLE HAS AN ELECTRICAL BURNING ODOR QUITE OFTEN, AFTER HAVING DRIVEN SHORT OR LONG DISTANCES. PLEASE REQUIRE KIA TO SOURCE THE ISSUE AND REPAIR, AT THEIR COST, THE ISSUE BEFORE THIS VEHICLE STARTS A FIRE!!!

- **Date Complaint Filed:** March 4, 2015
  **Date of Incident:** February 19, 2015
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10692124
  **Consumer Location:** BIG BEAR CITY, CA
  **Vehicle Identification No. (VIN):** 5XXGR4A67DG****
  **Summary of Complaint:**

ON 2/19/2015 AT 8:30 A.M. MY WIFE DROVE OUR 2013 KIA OPTIMA
APPROXIMATELY 6 MILES TO THE LOCAL SUPERMARKET AND THEN DROVE
THE 6 MILES BACK HOME. MAXIMUM SPEEDS REACHED WERE NO MORE
THAN 50 MPH WITH THE MAJORITY OF THE DRIVE BEING AT 35 MPH. ABOUT
HALFWAY HOME SHE NOTICED AN UNFAMILIAR SMELL BUT WAS NOT SURE
WHAT IT WAS, AND THE CAR SEEMED TO BE DRIVING NORMALLY AND NO
WARNING LIGHTS EVER CAME ON. AS SHE PULLED INTO THE GARAGE AT
OUR HOME SHE THEN NOTICED SMOKE COMING FROM UNDER THE HOOD.
SHE IMMEDIATELY OPENED THE HOOD AND SAW FLAMES SHOOTING OUT
FROM THE BACK OF THE ENGINE COMPARTMENT NEAR THE TURBO. SHE
RAN INTO THE HOUSE AND GRABBED A FIRE EXTINGUISHER. SHE USED THE
ENTIRE EXTINGUISHER TO PUT OUT THE FLAMES. I CAME HOME AND
TOGETHER WE PUSHED THE VEHICLE OUT OF THE GARAGE AND CALLED
KIA. THE VEHICLE WAS THEN TOWED 43 MILES AWAY TO THE CLOSEST KIA
DEALERSHIP. KIA COOPERATE CONSUMER AFFAIRS DIVISION WAS
IMMEDIATELY IN CONTACT WITH US, WE STATED THAT WE NO LONGER
FELT SAFE WITH THIS VEHICLE AND WANTED IT REPLACED. THE
DEALERSHIP INFORMED US THAT THEY COULD NOT EVEN TOUCH THE
VEHICLE UNTIL AN INVESTIGATOR FROM KIA CORP. LOOKED AT THE
VEHICLE. AFTER PICTURES OF THE INCIDENT WERE RECEIVED BY
COOPERATE THE WHOLE SITUATION CHANGED. . . .

### 4. 2014 Kia Optima

- **Date Complaint Filed:** November 15, 2018
  **Date of Incident:** October 15, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11151813
  **Consumer Location:** PARIS, TX
  **Vehicle Identification No. (VIN):** 5XXGN4A7XEG****
  **Summary of Complaint:**
  THE CONTACT OWNS A 2014 KIA OPTIMA. WHILE THE VEHICLE WAS
  STATIONARY, SMOKE ASCENDED FROM THE HOOD. THERE WAS NO
  INDICATION OF THE VEHICLE OVERHEATING PRIOR TO THE FAILURE.

- **Date Complaint Filed:** October 31, 2018
  **Date of Incident:** August 18, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11144563
  **Consumer Location:** LAS VEGAS, NV
  **Vehicle Identification No. (VIN):** 5XXGN4A73EG****
  **Summary of Complaint:**
  THE CONTACT OWNS A 2014 KIA OPTIMA. THE CONTACT STATED THAT
  WHILE REVERSING AT 5 MPH, SMOKE WAS SEEN COMING FROM UNDER THE
  HOOD. AS A RESULT THE VEHICLE CAUGHT ON FIRE. THE LOCAL FIRE
  DEPARTMENT WAS CALLED AND EXTINGUISHED THE FIRE. A FIRE
  DEPARTMENT REPORT WAS FILED. THE CONTACT SUSTAINED SCRAPS AND

BRUISES FROM ESCAPING THE VEHICLE. THE VEHICLE WAS TOWED TO JIM MARSH KIA (8555 W CENTENNIAL PKWY, LAS VEGAS, NV 89149 (702) 946-1000) BUT A CAUSE OF THE FIRE WAS NOT PROVIDED TO THE CONTACT. THE CONTACT MENTIONED THAT THE VEHICLE WAS REPAIRED UNDER NHTSA CAMPAIGN NUMBER: 17V224000 (ENGINE AND ENGINE COOLING) AT THE SAME DEALER BEFORE THE FAILURE OCCURRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 89,000.

- **Date Complaint Filed:** October 9, 2018
  **Date of Incident:** September 16, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11139148
  **Consumer Location:** MCKEESPORT, PA
  **Vehicle Identification No. (VIN):** KNAGM4A76E5****
  **Summary of Complaint:**
  FIRE! MY 2014 KIA OPTIMA CAUGHT FIRE WHILE I WAS DRIVING IT ON THE HIGHWAY. FIRST, I COULD SMELL SOMETHING BURNING. THEN, SMOKE QUICKLY FILLED MY CABIN. I PULLED OVER LOST STEERING AND BRAKES, PUT CAR IN PARK. GOT OUT LOOK BEHIND ME. SEE SPARKS ON GROUND. GET IN CALL 911 AND WITH IN SECONDS MY CAR SNAP, CRACKLED, AND POPPED AND FLAMES ENGULFED MY VEHICLE. I GRABBED MY PURSE AND RAN. I HAD TO WATCH MY CAR BURN. I AM VERY THANKFUL I MADE IT OUT.

- **Date Complaint Filed:** June 8, 2016
  **Date of Incident:** May 9, 2016
  **Component(s):** ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 10873251
  **Consumer Location:** OKLAHOMA CITY, OK
  **Vehicle Identification No. (VIN):** 5XXGN4A74EG****
  **Summary of Complaint:**
  MAY 9TH 2016, DRIVING TO WORK ON I-44 HEADING TO WORK, MY VEHICLE WITHOUT WARNING SHUTS OFF AND DIES, I START TO SEE WHITE SMOKE COME FROM THE ENGINE COMPARTMENT, I SAFELY PULL THE CAR OVER TO SHOULDER BECAUSE IT WAS STILL ROLLING. EXIT THE VEHICLE AND OPEN THE HOOD, AND THE ENGINE CATCHES FIRE ON THE DRIVER SIDE OF THE ENGINE. I HAVE SPOKEN TO MANY CERTIFIED MECHANICS ALL WITH THE SAME ANSWER THAT IT WAS AN ELECTRICAL FIRE. I HAVE SINCE COMPLETED THE TOTAL LOSS PROCESS WITH MY INSURANCE. I HAVE CONTACTED KIA CONSUMER AFFAIRS WHO WERE ABSOLUTELY ZERO HELP. THE VEHICLE WAS STILL UNDER WARRANTY AS IT ONLY HAD JUST OVER 36000 MILES.

## 1.    2010 Kia Soul

- **Date Complaint Filed:** August 16, 2010
  **Date of Incident:** August 2, 2010
  **Component(s):** INTERIOR LIGHTING, ELECTRICAL SYSTEM
  **NHTSA ID Number:** 10349737
  **Consumer Location:** PALM BAY, FL

**Vehicle Identification No. (VIN):** N/A
**Summary of Complaint:**
BRAND NEW KIA SOUL 2010 - LESS THAN 500 MILES. ELECTRICAL FIRE IN THE DOOR PANEL WHILE DRIVING. TOWED TO DEALER, WHO REPLACED DOOR PANEL. LED LIGHT TRANSMITTER IN SPEAKERS SHORTED AND MELTED PLASTIC INSIDE DOOR. RESPONSE FROM KIA (ADVISED BY DEALER) WAS "DON'T LEAVE THE SPEAKER LIGHTS IN ON POSITION. ONLY USE THEM WHEN YOU NEED THEM." THIS WAS THE SECOND SAME INCIDENT THAT THE DEALER HAD THAT WEEK.

### 2.   2011 Kia Soul
- **Date Complaint Filed:** June 18, 2018
  **Date of Incident:** June 13, 2018
  **Component(s):** FUEL/PROPULSION SYSTEM, ENGINE
  **NHTSA ID Number:** 11102349
  **Consumer Location:** SHARON, PA
  **Vehicle Identification No. (VIN):** N/A
  **Summary of Complaint:**
  THE CONTACT OWNS A 2011 KIA SOUL. WHILE THE CONTACT WAS EXITING THE VEHICLE IN THE DRIVEWAY, THERE WAS AN EXPLOSION AND THE VEHICLE CAUGHT ON FIRE WITHOUT WARNING. THERE WERE NO INJURIES. THE CONTACT USED A FIRE EXTINGUISHER TO PUT OUT THE FIRE. THE VEHICLE WAS NOT TOWED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE DEALER AND MANUFACTURER WERE NOT MADE AWARE OF THE FAILURE. THE EXACT ORIGIN OF THE FIRE WAS UNKNOWN. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 12,000.

### 3.   2012 Kia Soul
- **Date Complaint Filed:** July 7, 2014
  **Date of Incident:** June 14, 2013
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10608591
  **Consumer Location:** MIDDLETOWN, NY
  **Vehicle Identification No. (VIN):** KNDJT2A59C7****
  **Summary of Complaint:**
  MY 2012 KIA SOUL CAUGHT FIRE AFTER DRIVING IT FOR APPROXIMATELY 25 MINUTES. THE FIRE STARTED AT THE ENGINE COMPARTMENT AND WAS CONSISTENT WITH A PROBLEM WITH FUEL INJECTION. THE WHOLE CAR BURNED DOWN WITHIN ABOUT 5 MINUTES.

- **Date Complaint Filed:** February 4, 2018
  **Date of Incident:** January 20, 2018
  **Component(s):** STRUCTURE, ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11066866
  **Consumer Location:** LAKE HAVASU CITY, AZ
  **Vehicle Identification No. (VIN):** KNDJT2A55C7****
  **Summary of Complaint:**

2012 KIA SOUL WITH LESS THAN 15,000 MILES ON IT SUDDENLY BURST INTO FLAMES AND THE CAR IS A TOTAL LOSS .

### 4.     2013 Kia Soul

- **Date Complaint Filed:** August 3, 2018
  **Date of Incident:** July 4, 2018
  **Component(s):** ELECTRICAL SYSTEM, ENGINE
  **NHTSA ID Number:** 11115650
  **Consumer Location:** WAXHAW, NC
  **Vehicle Identification No. (VIN):** KNDJT2A57D7****
  **Summary of Complaint:**
  THE CONTACT OWNED A 2013 KIA SOUL. THE CONTACT'S WIFE INFORMED HIM OF AN ABNORMAL ODOR ON THE OUTSIDE OF THE VEHICLE. APPROXIMATELY 45 MINUTES LATER, THE VEHICLE CAUGHT ON FIRE. THE FIRE DEPARTMENT WAS CALLED AND EXTINGUISHED THE FIRE. A FIRE REPORT WAS FILED AND THE FIRE MARSHALL DIAGNOSED THAT THE WIRING IN FRONT OF THE ENGINE COMPARTMENT CAUSED THE FIRE. THERE WERE NO INJURIES SUSTAINED. THE VEHICLE WAS DESTROYED BY THE FIRE. THE DEALER WAS NOT NOTIFIED. THE MANUFACTURER WAS NOTIFIED, BUT DID NOT ASSIST. THE FAILURE MILEAGE WAS 45,000.

### 5.     2014 Kia Soul

- **Date Complaint Filed:** August 18, 2014
  **Date of Incident:** August 17, 2014
  **Component(s):** STRUCTURE, ENGINE, ELECTRICAL SYSTEM
  **NHTSA ID Number:** 10626163
  **Consumer Location:** MINNEAPOLIS, MN
  **Vehicle Identification No. (VIN):** KNDJN2A23E7****
  **Summary of Complaint:**
  WE HAD BEEN DRIVING FOR ABOUT 20 MINUTES. WE PULLED OFF HIGHWAY TO LOOK AT A TOURIST ATTRACTION. NO INDICATION WHATSOEVER THAT ANYTHING WAS WRONG WITH THE CAR. PARKED, TURNED CAR OFF. GOT OUT. GLANCED BACK AT THE CAR AND SMOKE WAS POURING OUT FROM UNDER THE HOOD. SOON THERE WERE FLAMES DRIPPING FROM UNDERNEATH FRONT END (LOOKED LIKE MELTING PLASTIC). CALLED FIRE DEPARTMENT. WITHIN 1 MINUTE FLAMES WERE JUMPING UP ON INTERIOR (DASH AREA) AND EXTERIOR (UNDER HOOD). GOT FIRE EXTINGUISHER FROM NEARBY BUSINESS, BUT WITH HOOD CLOSED, DID NOT HELP. WITHIN 4 MINUTES ENTIRE FRONT END AND FRONT INTERIOR WERE ENGULFED IN ENORMOUS FLAMES. MANY POPPING NOISES (EXPLOSIONS). FIRE DEPARTMENT ARRIVED AFTER ABOUT 5 MINUTES AND EXTINGUISHED THE FIRE. ENTIRE FRONT END OF CAR MELTED TO THE GROUND. I SHOULD NOTE THAT WHILE WE LEFT THE CAR UNLOCKED WHEN WE GOT OUT, THE DOORS LOCKED THEMSELVES DURING THE FIRE, AND THE KEY FOB WAS INOPERABLE (LOCK ELECTRONICS IN THE CAR WERE FRIED). HAD A PERSON OR PET BEEN IN THE CAR, THEY WOULD HAVE BEEN TRAPPED. MY HUSBAND CUT HIS FACE DURING THIS, BUT DID NOT SEEK A DOCTOR. ALL PERSONAL ITEMS IN THE CAR ARE SEVERELY DAMAGED BY SMOKE.

**6.    2015 Kia Soul**
- **Date Complaint Filed:** August 25, 2016
  **Date of Incident:** August 24, 2016
  **Component(s):** ENGINE
  **NHTSA ID Number:** 10898504
  **Consumer Location:** HERNANDO, FL
  **Vehicle Identification No. (VIN):** KNDJN2A28F7****
  **Summary of Complaint:**
  THE CAR CAUGHT FIRE UNDER THE HOOD OF THE ENGINE. UPON ARRIVING HOME FROM GROCERY STORE PASSENGER NOTICED SMOKE UNDER THE HOOD. THE FIRE WAS EXTINGUISHED AND THE KIA EMERGENCY ROADSIDE SERVICE WAS CALLED. THE LOCAL KIA DEALER DOESNT WANT ANYTHING TO DO WITH THE CAR EVEN THOUGH THE CAR IS STILL UNDER FACTORY WARRANTY . KIA CORPORATE ISN'T MUCH HELP EITHER SAYING IT WILL BE 2-5 BUSINESS DAYS BEFORE SOMEONE FROM THERE WILL BE ABLE TO COME AND INSPECT IT. IN THE MEANTIME I AM STRANDED IN FORT WAYNE WITH NO TRANSPORTATION. AGAIN THE CAR IS STILL UNDER FACTORY WARRANTY!!!!!!!!!

- **Date Complaint Filed:** April 20, 2018
  **Date of Incident:** April 5, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11089043
  **Consumer Location:** MURRIETA, CA
  **Vehicle Identification No. (VIN):** KNDJX3A52F7****
  **Summary of Complaint:**
  I WAS DRIVING MY 2015 KIA SOUL ON MY NORMAL ROUTE TO WORK ON 4/5/18. IT WAS A DARK, CLEAR MORNING ON A BUSY HIGHWAY. I WAS MOVING WITH TRAFFIC AT APPROXIMATELY 60 MPH. AT JUST ABOUT 5:30 A.M., THE VEHICLE MADE A NOISE AND LOST ACCELERATION. I WAS ABLE TO GET TO THE SIDE OF THE HIGHWAY AND PARK THE VEHICLE. I WAS PARKED FOR APPROXIMATELY 3 MINUTES WHEN I SAW SMOKE AND FLAMES COMING FROM THE ENGINE. I EXITED THE VEHICLE. SHORTLY THEREAFTER, THE VEHICLE WAS FULLY ENGULFED IN FLAMES. NO OTHER PERSONS OR VEHICLES WERE INVOLVED IN THIS INCIDENT. I PURCHASED THE VEHICLE NEW AND IT HAD HAD NO SIGNIFICANT MECHANICAL WORK IN THE 2 ½ YEARS THAT I OWNED IT, JUST NORMAL OIL CHANGES AND A COUPLE OF SAFETY RECALLS. NEITHER THE FIREFIGHTER ON THE SCENE, NOR THE INSURANCE ADJUSTER, WERE ABLE TO DETERMINE THE CAUSE OF THE FIRE, ONLY THAT IT STARTED IN THE ENGINE.

51.    Despite these complaints from CAS and consumers, Defendants have yet to issue a recall or even inform owners of the Class Vehicles of the Wiring Defect and its safety risk. Defendants' deceptive acts and omissions regarding the Wiring Defect create a safety risk for drivers and occupants of the Class Vehicles that experience an electrical shortage due to the Wiring

1  Defect while they are being driven.  When the wiring in the Class Vehicles' suffer an electrical

2  short, the wiring can burn and possibly cause an electrical fire, thereby increasing the risk of

3  accident or injury.  The reasonable expectation that the Class Vehicles are safe and reliable to drive

4  (and ride in), including being free from an unreasonable risk of a non-collision related fire, is and

5  was material to Plaintiffs and Class members at all relevant times.

6      52.     Notwithstanding Defendants' exclusive and superior knowledge of the Wiring

7  Defect, Defendants failed to disclose the defect to consumers at the time of purchase or lease of the

8  Class Vehicles (or at any time thereafter) and continue to service Class Vehicles containing the

9  Wiring Defect.  At minimum, Defendants became aware of the Wiring Defect through voluminous

10 consumer complaints and subsequent internal and third-party investigations, including the CAS

11 investigation.  Although Defendants were aware of the widespread nature of the Wiring Defect in

12 the Class Vehicles, and that it posed grave safety risks, Defendants have neither provided relief to

13 owners of the Class Vehicles, nor have they taken adequate steps to do so.

14     53.     Defendants are fully aware of the Wiring Defect contained in the Class Vehicles.

15 Nevertheless, Defendants actively concealed the existence and nature of the Wiring Defect from

16 Plaintiffs and the other members of the Classes at the time of purchase or repair and thereafter.

17 Specifically, Defendants: (a) failed to disclose, at the time of purchase or repair and thereafter, any

18 and all known material defects or material nonconformities of the Class Vehicles, including the

19 Wiring Defect; (b) failed to disclose, at the time of purchase or repair and thereafter, that the Class

20 Vehicles and their wiring were not in good working order, were defective and prone to failure, and

21 were not fit for their intended purpose; and (c) failed to disclose and/or actively concealed the fact

22 that the Class Vehicles and their wiring were defective, despite the fact that Defendants learned of

23 the Wiring Defect before it placed the Class Vehicles in the stream of commerce.

24     54.     Defendants have deprived Plaintiffs and members of the Classes of the benefit of

25 their bargain, exposed them to a dangerous safety defect, and caused them to expend money at its

26 dealerships or other third-party repair facilities and/or take other remedial measures related to the

27 Wiring Defect contained in the Class Vehicles.  As a result, Plaintiffs and members of the Classes

28

have not received the value for which they bargained when they purchased or leased the Class Vehicles.

55.     Further, as a result of the Wiring Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles.  Reasonable consumers, like Plaintiffs and members of the Classes, expect and assume that a vehicle's wiring and related components are not defective and will not malfunction during normal operation.

56.     Plaintiffs and members of the Classes further expect and assume that Defendant will not sell or lease vehicles with known safety defects, such as the wiring defect, and will fully disclose any such defect to consumers prior to purchase, or offer a suitable, non-defective, repair.

## V.   TOLLING OF THE STATUTE OF LIMITATIONS

57.     Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the Wiring Defect and the misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and Class members were deceived regarding the Wiring Defect and could not have reasonably discovered the latent nature of the Wiring Defect prior to experiencing it and/or being informed of it.  Within the time period of any applicable statutes of limitations, Plaintiffs and Class members could not have discovered through the exercise of reasonable diligence that Defendants were concealing the Wiring Defect.

58.     Plaintiffs and Class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a latent defect and/or that the Class Vehicles contained wiring prone to electrical shorts.  As alleged herein, the existence of the Wiring Defect and safety risk were material to Plaintiffs and Class members at all relevant times.

59.     At all times, Defendants are and were under a continuous duty to disclose to Plaintiffs and Class members the true standard, quality, and grade of the Class Vehicles and to disclose the Wiring Defect and potential safety risks associated with it (i.e. that the Wiring Defect can cause an electrical short and lead to the vehicle to be engulfed in flames during normal operation).

60.     Defendants knowingly, actively and affirmatively concealed the facts alleged herein including the Wiring Defect.  Plaintiffs and Class members reasonably relied on Defendants' knowing, active, and affirmative concealment of the Wiring Defect.

61.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment and Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VI.  CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated.

63.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Class and Subclasses:

> All persons in the United States that purchased, leased, or own a Class Vehicle (the "Nationwide Class");

> All persons in New Jersey that purchased, leased, or own a Class Vehicle (the "New Jersey Subclass");

> All persons in Florida that purchased, leased, or own a Class Vehicle (the "Florida Subclass"); and

> All persons in California that purchased, leased, or own a Class Vehicle (the "California Subclass") (collectively, the "Classes").

64.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment or amended complaint, or narrowed at class certification.

65.     Specifically excluded from the Classes are Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

66.   **Numerosity.**  The members of the proposed Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are hundreds of thousands of individuals that are members of the proposed Classes.  Although the precise number of proposed members is unknown to Plaintiffs, the true number of members of each of the Classes is known by Defendants.  More specifically, Defendants and their networks of authorized dealers maintain databases that contain the following information: (i) the name of each Class member that leased or purchased a Class Vehicle; and (ii) the address of each Class member.  Thus, members of the proposed Classes may be identified and notified of the pendency of this action by first class mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

67.   **Typicality.**  The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all members of the Classes, paid for a Class Vehicle designed, manufactured, and distributed by Defendants which is subject to the Wiring Defect. The representative Plaintiffs, like all members of the Classes, have been damaged by Defendants' misconduct in that they have incurred or will incur the cost of repairing or replacing their malfunctioning airbag control computers and related parts as a result of the ACU defect. Further, the factual bases of Defendants' misconduct are common to all members of the Classes and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all members of the Classes.

68.   **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes.  These common legal and factual questions include, but are not limited to, the following:

(a)    Whether the Class Vehicles suffer from the Wiring Defect;

(b)    Whether the Class Vehicles contain a design defect and/or a defect in material, manufacturing and/or workmanship;

(c)    Whether the Wiring Defect constitutes an unreasonable safety hazard;

(d)  Whether Defendants knew or should have known about the Wiring Defect and, if so, how long Defendants have known of the Wiring Defect;

(e)  Whether Defendants had a duty to disclose that the Class Vehicles suffer from the Wiring Defect;

(f)  Whether Defendants breached their duty to disclose that the Class Vehicles suffer from the Wiring Defect;

(g)  Whether Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the fact that the Class Vehicles suffered from the Wiring Defect;

(h)  Whether Defendants negligently and falsely misrepresented or omitted material facts including the fact that the Class Vehicles suffered from the Wiring Defect;

(i)  Whether Defendants made material misrepresentations and/or omissions concerning the standard, quality or grade of the Class Vehicles and the Wiring Defect;

(j)  Whether members of the Classes would have paid less for the Class Vehicles if Defendants, at the time of purchase or lease, disclosed that the vehicles suffered from the Wiring Defect;

(k)  Whether Defendants are liable to Plaintiffs and the Classes for breaching their express and/or implied warranties;

(l)  Whether Defendants are liable to Plaintiffs and the Classes for violation of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* and/or any other statutory duties under state laws;

(m)  Whether Defendants violated the California Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

(n)  Whether Defendants violated the New Jersey Consumer Fraud Act. N.J.S.A. §§ 56:8-1, *et seq.*;

(o)  Whether Defendants violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201, *et seq.*;

(p)  Whether Defendants are liable to Plaintiffs and the Classes for unjust enrichment;

(q)  Whether Defendants actively concealed material facts from Plaintiffs and members of the Classes in order to, *inter alia*, sell more Class Vehicles and/or transfer the costs associated with repair or replacement of the Wiring Defect to Plaintiffs and the Classes; and

(r)  Whether Plaintiffs and the Classes are entitled to damages, restitution, equitable, injunctive, compulsory, or other relief.

69. **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs have retained counsel who are highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Classes.  Plaintiffs have no interests that are antagonistic to those of the Classes.

70. **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by members of the Classes is relatively small compared to the burden and expense of individual litigation of their claims against Defendants.  It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

71. In the alternative, the Class may also be certified because:

(a)    the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)    Defendants have acted or refused to act on grounds generally applicable to the Class and Subclasses as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

1

## VII.  CAUSES OF ACTION

2

### FIRST COUNT
**Fraud**

3

4
72.    Plaintiffs incorporate and reallege each of the preceding paragraphs as though fully set forth herein.

5

6
73.    Plaintiffs bring this count on behalf of themselves and the members of the Class and Subclasses.

7

8
74.    Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Class Vehicles are defective in that they suffer from the Wiring Defect, exposing drivers and occupants to safety risks with the intent that Plaintiffs and members of the Classes rely on Defendants' misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

9

10

11

12

13
75.    As a result of Defendants' failure to disclose to members of the Classes the material fact that the Class Vehicles suffered from the Wiring Defect, owners and lessors of the Class Vehicles are required to spend thousands of dollars to repair or replace the Wiring Defect or sell their vehicles at a substantial loss.  The fact that the Class Vehicles suffer from the Wiring Defect is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the vehicles' wiring and/or other components, and because Plaintiffs and members of the Classes had a reasonable expectation that the vehicles would not suffer from the Wiring Defect.

14

15

16

17

18

19

20

21
76.    The fact that the Class Vehicles suffer from the Wiring Defect is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  Because of the Wiring Defect, the Class Vehicles are susceptible to non-collision fires, exposing owners and occupants to risk of serious injury or death.  Plaintiffs and members of the Classes would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Wiring Defect, or would have paid less for the Class Vehicles.

22

23

24

25

26

27

28

77.    Defendants knew their false misrepresentation, concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Wiring Defect would sell more Class Vehicles.

78.    Plaintiffs are informed and believe, and based thereon allege, that despite notice of the Wiring Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Defendants have not offered their customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Wiring Defect.

79.    Even after a CAS investigation and now a Congressional investigation, Defendants have failed to take any meaningful steps to remediate the Wiring Defect, and their customers are still driving inherently unsafe and devalued vehicles.

80.    As such, Defendants acted with malice, oppression and fraud. Plaintiffs and members of the Classes reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions.  As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the wiring defect, Plaintiffs and members of the Classes have suffered actual damages in an amount to be determined at trial.

## SECOND COUNT
### Breach Of Express Warranty

81.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

82.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class and Subclasses.

83.    Defendants marketed the Class Vehicles as safe, built to last, and reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs' and Class members' decisions to purchase or lease the Class Vehicles.

84.     Defendants are and were at all relevant times merchants and sellers of motor vehicles as defined under the Uniform Commercial Code.

85.     With respect to leases, Defendants are and were at all relevant times lessors of motor vehicles as defined under the Uniform Commercial Code.

86.     The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

87.     Hyundai offers a 10-Year/100,000-Mile Powertrain Warranty that applies to all Hyundais built after 2004 that:

> Covers repair or replacement of powertrain components (i.e., selected engine and transmission/transaxle components), originally manufactured or installed by Hyundai that are defective in material or factory workmanship, under normal use and maintenance. Coverage applies to original owner only, effective with 2004 model year and newer model-year vehicles. On 1999-2003 model years, coverage applies to original owner and immediate family members (i.e., wife, husband, daughter, son, stepdaughter, stepson).

> Second and/or subsequent owners have powertrain components coverage under the 5-Year/60,000-Mile New Vehicle Limited Warranty. Excludes coverage for vehicles in commercial use (e.g., taxi, route delivery, delivery service, rental, etc.).[23]

88.     In addition, Hyundai provides a 5-Year/60,000-Mile New Vehicle Limited Warranty that:

> Covers repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance.[24]

89.     Hyundai also provides a 12-Month/12,000-Mile Replacement Parts and Accessories Limited Warranty that:

> Covers repair or replacement of any Hyundai Genuine Replacement Parts or Accessories supplied by Hyundai that are defective in

---

[23] https://www.hyundaiusa.com/assurance/america-best-warranty.aspx (last visited 11/6/18).
[24] Id.

material or factory workmanship, under normal use and
maintenance.

Genuine Hyundai Parts or Accessories supplied by Hyundai and
purchased from an authorized Hyundai dealer, but not installed by an
authorized Hyundai dealer, are covered for 12 months/unlimited
miles.

Accessories installed on a vehicle at the time of, or prior to, the
vehicle's date of first use are covered under the 5-Year/60,000-Mile
New Vehicle Limited Warranty.

Accessories installed after the vehicle's date of first use are covered
for 12 months/12,000 miles.[25]

90.     Similarly, Kia provides a 5-year/60,000-Mile Limited Basic Warranty that applies to
all Kias built after 2008 and covers:

all components of your new Kia Vehicle are covered for 60
months/60,000 miles from the Date of First Service, whichever
comes first (Basic Limited Warranty Coverage).  This Warranty does
not cover wear and maintenance items, or those items excluded
elsewhere in the Manual.[26]

91.     For original owners, Kia provides a Power Train Limited Warranty that:

begins upon expiration of the 60 month/60,000 mile Basic Limited
Warranty Coverage, and will continue to cover the following
components up to 120 months or 100,000 miles from the Date of
First Service, whichever comes first.  It does not cover normal wear
and tear, maintenance, or those items excluded elsewhere in this
manual.[27]

92.     Kia also provides a Replacement Parts and Accessories Limited Warranty that
covers:

Kia Genuine replacement parts (except battery) installed by an
Authorized Kia Dealer under warranty are covered for the greater of
(1) the duration of the New Vehicle Limited Warranty or (2) the first

---

[25] *Id.*
[26] https://www.kia.com/us/k3/content/media/all/warranty/2012_warranty.pdf (last visited 11/6/18).
[27] *Id.*

1

2

        12 months from the date of installation of the Kia Genuine
replacement parts or 12,000 miles.[28]

3

     93.     Under the warranties provided to Class Members, Defendants promised to repair or

4

replace defective components arising out of defects, such as the Wiring Defect, at no cost to

5

owners or lessors of the Class Vehicles.  Despite actual and constructive knowledge of Class

6

Vehicle defects as described in this complaint, Defendants failed to cure Class Vehicle defects

7

within the express warranty period and thereby breached the terms of the express warranty.

8

     94.     Defendants also expressly warranted that the Class Vehicles would be fully-

9

functioning.

10

     95.     Plaintiffs and Class Members could not have reasonably discovered the Wiring

11

Defect prior to failure.

12

     96.     Defendants' warranties formed a basis of the bargain that was reached when

13

Plaintiffs and members of the Classes purchased or leased their Class Vehicles.

14

     97.     Defendants breached an express warranty by designing, assembling,

15

manufacturing, and/or installing wiring harnesses in the Class Vehicles that cause a significant

16

propensity to lead to an electrical short and/or fire.

17

     98.     Despite the existence of the warranties, Defendants failed to inform Plaintiffs and

18

members of the Classes that the Class Vehicles contained the Wiring Defect, and, thus, wrongfully

19

transferred the costs of repair or replacement of the Wiring Defect to Plaintiffs and members of the

20

Classes.

21

     99.     Defendants have failed to provide Plaintiffs or members of the Classes with a

22

meaningful remedy for the Wiring Defect, in breach of the express warranties described above.

23

     100.    As described at length above, Defendants were on notice of the Wiring Defect, and

24

as such have been afforded a reasonable opportunity to cure their breach of express warranties.

25

Any additional time to do so would be unnecessary and futile because Defendants have known of

26

and concealed the Wiring Defect and, on information and belief, have refused to repair or replace

27

28

[28] *Id.*

the Wiring Defect free of charge despite its existence at the time of sale or lease of the Class

Vehicles.

101.     As a direct and proximate result of Defendants' breach of express warranties,

Plaintiffs and the members of the Classes have been damaged in an amount to be determined at

trial.

102.     Finally, because of Defendants' breach of express warranty as set forth herein,

Plaintiffs and the members of the Classes assert, as additional and/or alternative remedies, the

revocation of acceptance of the goods and the return to Plaintiffs and members of the Classes of the

purchase or lease price of all Class Vehicles currently owned or leased, and for such other

incidental and consequential damages as allowed.

103.     On November 12, 2018, prior to filing this action, Defendants were served with a

pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313, 2-607.  Plaintiffs' counsel

sent Defendants a letter advising them that they breached an express warranty and demanded that

they cease and desist from such breaches and make full restitution by refunding the monies

received therefrom.

### THIRD COUNT
**Breach Of Implied Warranty**

104.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set

forth herein.

105.     Plaintiffs bring this count on behalf of themselves and members of the Classes.

106.     Plaintiffs and members of the Classes purchased or leased the Class Vehicles from

Defendants by and through Defendants' authorized agents for retail sales, or were otherwise

expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At

all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of

Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class

Vehicles were purchased or leased.

107.     Defendants are and were at all relevant times merchants and sellers of motor

vehicles as defined under the Uniform Commercial Code.

108.    With respect to leases, Defendants are and were at all relevant times lessors of motor vehicles as defined under the Uniform Commercial Code.

109.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

110.    Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

111.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain the Wiring Defect and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

112.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial.

### FOURTH COUNT
**Violation Of The Magnuson-Moss Warranty Act ("MMWA")**

113.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

114.    Plaintiffs bring this count on behalf of themselves and members of the Classes.

115.    Plaintiffs satisfy the MMWA jurisdictional requirement because they allege diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

116.    Plaintiffs and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

117.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

118.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

119.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

120.    Defendants provided Plaintiffs and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).

121.    Hyundai offers a 10-Year/100,000-Mile Powertrain Warranty that applies to all Hyundais built after 2004 that

> Covers repair or replacement of powertrain components (i.e., selected engine and transmission/transaxle components), originally manufactured or installed by Hyundai that are defective in material or factory workmanship, under normal use and maintenance. Coverage applies to original owner only, effective with 2004 model year and newer model-year vehicles. On 1999-2003 model years, coverage applies to original owner and immediate family members (i.e., wife, husband, daughter, son, stepdaughter, stepson).
>
> Second and/or subsequent owners have powertrain components coverage under the 5-Year/60,000-Mile New Vehicle Limited Warranty. Excludes coverage for vehicles in commercial use (e.g., taxi, route delivery, delivery service, rental, etc.).[29]

122.    In addition, Hyundai provides a 5-Year/60,000-Mile New Vehicle Limited Warranty that

> Covers repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance.[30]

123.    Hyundai also provides a 12-Month/12,000-Mile Replacement Parts and Accessories Limited Warranty that

> Covers repair or replacement of any Hyundai Genuine Replacement Parts or Accessories supplied by Hyundai that are defective in material or factory workmanship, under normal use and maintenance.

---

[29] https://www.hyundaiusa.com/assurance/america-best-warranty.aspx (last visited 11/6/18).
[30] *Id.*

Genuine Hyundai Parts or Accessories supplied by Hyundai and purchased from an authorized Hyundai dealer, but not installed by an authorized Hyundai dealer, are covered for 12 months/unlimited miles.

Accessories installed on a vehicle at the time of, or prior to, the vehicle's date of first use are covered under the 5-Year/60,000-Mile New Vehicle Limited Warranty.

Accessories installed after the vehicle's date of first use are covered for 12 months/12,000 miles.[31]

124.    Similarly, Kia provides a 5-year/60,000-Mile Limited Basic Warranty that applies to all Kias built after 2008 and covers

all components of your new Kia Vehicle are covered for 60 months/60,000 miles from the Date of First Service, whichever comes first (Basic Limited Warranty Coverage).  This Warranty does not cover wear and maintenance items, or those items excluded elsewhere in the Manual.[32]

125.    For original owners, Kia provides a Power Train Limited Warranty that

begins upon expiration of the 60 month/60,000 mile Basic Limited Warranty Coverage, and will continue to cover the following components up to 120 months or 100,000 miles from the Date of First Service, whichever comes first.  It does not cover normal wear and tear, maintenance, or those items excluded elsewhere in this manual.[33]

126.    Kia also provides a Replacement Parts and Accessories Limited Warranty that covers

Kia Genuine replacement parts (except battery) installed by an Authorized Kia Dealer under warranty are covered for the greater of (1) the duration of the New Vehicle Limited Warranty or (2) the first 12 months from the date of installation of the Kia Genuine replacement parts or 12,000 miles.[34]

---

[31] Id.
[32] https://www.kia.com/us/k3/content/media/all/warranty/2012_warranty.pdf (last visited 11/6/18).
[33] Id.
[34] Id.

127.   Despite the applicable warranties, Defendants have failed to provide owners with a remedy to the Wiring Defect.

128.   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

129.   Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Wiring Defect.  Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship.  As set forth at length above, Defendants had acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Wiring Defect.

130.   Plaintiffs and members of the Classes have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the Classes, on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each member of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessors of the Class Vehicles only.

131.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Wiring Defect, but failed to remediate the same.  Likewise, Defendants failed to disclose or acknowledge the Wiring Defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

132.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

133.     Plaintiffs, individually and on behalf of members of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**FIFTH COUNT**
**Unjust Enrichment**

134.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

135.     Plaintiffs bring this count on behalf of themselves and members of the Classes.

136.     Plaintiffs and members of the Classes conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Wiring Defect.

137.     Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the Wiring Defect in the Class Vehicles.

138.     As a proximate result of Defendants' false representations, omissions and concealment of the Wiring Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiffs and members of the Classes.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiffs and members of the Classes.

139.     Plaintiffs and members of the Classes are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

140.     Plaintiffs and members of the Classes seek an order requiring Defendants' to disgorge their gains and profits to Plaintiff and members of the Classes, together with interest, in a manner to be determined by the Court.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIXTH COUNT
### Violation Of The New Jersey Consumer Fraud Act ("NJCFA")

141.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

142.    Plaintiff Krakauer brings this claim on behalf of himself and the New Jersey Subclass.

143.    The NJCFA prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. . . ."  N.J.S.A. § 56:8-2.

144.    Plaintiff Krakauer and members of the New Jersey Subclass are consumers who purchased or leased the Class Vehicles for personal, family, or household use.

145.    In violation of the NJCFA, Defendants employed unconscionable commercial practices, deception, fraud, false pretense and/or false promise by providing Class Vehicles that contain the Wiring Defect and present an undisclosed safety risk to drivers and occupants of the Class Vehicles.  Further, Defendants misrepresented the standard, quality or grade of the Class Vehicles which were sold or leased with the latent defect and failed to disclose the Wiring Defect and corresponding safety risk in violation of the NJCFA.

146.    Defendants' misrepresentations and fraudulent omissions were material to Plaintiff Krakauer and the Subclass.  When Plaintiff Krakauer and members of the New Jersey Subclass purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles would not pose an unavoidable safety risk.  Had Defendants disclosed the Wiring Defect, Plaintiff Krakauer and members of the New Jersey Subclass would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

147.    Defendants knowingly concealed, suppressed and/or omitted the existence of the Wiring Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

148.    Plaintiff Krakauer is informed and believes, and based thereon alleges, that despite notice of the Wiring Defect from, among other things, the CAS Petition and demand for recall, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Defendants have not repaired the Wiring Defect, have not offered their customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Wiring Defect.

149.    Defendants owed a duty to disclose the Wiring Defect and its corresponding safety risk to Plaintiff Krakauer and New Jersey Subclass members because Defendants possessed superior and exclusive knowledge regarding the Wiring Defect and the risks associated therewith. Rather than disclose the Wiring Defect, Defendants intentionally concealed the Wiring Defect with the intent to mislead Plaintiff Krakauer and the New Jersey Subclass members in order to sell additional Class Vehicles.

150.    Had Plaintiff Krakauer and the New Jersey Subclass members known about the Wiring Defect at the time of purchase, they would not have bought the Class Vehicles or would have paid much less for them.

151.    As a direct and proximate result of Defendants' wrongful conduct in violation of the NJCFA, Plaintiff Krakauer and the New Jersey Subclass members have suffered and continue to suffer harm as a result of the Wiring Defect and/or actual damages in the amount of the cost to repair or replace the Class Vehicles, and damages to be determined at trial.  Plaintiff Krakauer and New Jersey Subclass members have also suffered the ascertainable loss of the diminished value of their vehicles.

152.    As a result of Defendants' fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, Plaintiff Krakauer and the New Jersey Subclass are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial.  *See* N.J.S.A. § 56:8-19.

153.    Plaintiff Krakauer and the New Jersey Subclass also seek an order enjoining Defendants' unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA.  *See* N.J.S.A. § 56:8-19.

## SEVENTH COUNT

**Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201, *et seq.***

154.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

155.    Plaintiffs Raiskin and Salvadore bring this count on behalf of themselves and the Florida Subclass.

156.    This Count is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Fla. Stat. Ann. § 501.201, *et seq.*

157.    The FDUTPA is to be "construed liberally" to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.202.

158.    At all material times, Plaintiffs Raiskin and Salvadore, and all members of the Florida Subclass, were "consumers" within the meaning of the FDUTPA.  Fla. Stat. Ann. § 501.203(7).

159.    At all material times, Defendants were engaged in "trade or commerce" as defined by the FDUTPA.  Fla. Stat. Ann. § 501.203(8).

160.    The FDUTPA declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. Ann. § 501.204.

161.    In violation of the FDUTPA, Defendants employed unconscionable acts and practices, deception, deceptive acts and unfair acts and practices by providing Class Vehicles that contain the Wiring Defect and present an undisclosed safety risk to drivers and occupants of the Class Vehicles.  Further, Defendants misrepresented the standard, quality or grade of the Class

1

2

Vehicles which were sold or leased with a latent defect and failed to disclose the Wiring Defect and corresponding safety risk in violation of the FDUTPA.

3

4

5

6

7

8

9

162.    Defendants' misrepresentations and fraudulent omissions were material to Plaintiffs Raiskin and Salvadore, and the Florida Subclass.  When Plaintiffs Raiskin and Salvadore, and members of the Florida Subclass purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles would not pose an unavoidable safety risk.  Had Defendants disclosed the Wiring Defect, Plaintiffs Raiskin and Salvadore, and members of the Florida Subclass, would not have purchased or leased the Class Vehicles, or would have paid less for them.

10

11

163.    Defendants knowingly concealed, suppressed and/or omitted the existence of the Wiring Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

12

13

14

15

16

17

164.    Plaintiffs Raiskin and Salvadore are informed and believe, and based thereon allege, that despite notice of the Wiring Defect from, among other things, the CAS report and demand for recall, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Defendants have not repaired the Wiring Defect, have not offered their customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Wiring Defect.

18

19

20

21

22

23

165.    Defendants owed a duty to disclose the Wiring Defect and its corresponding safety risk to Plaintiff Raiskin and Florida Subclass members because Defendants possessed superior and exclusive knowledge regarding the Wiring Defect and the risks associated therewith.  Rather than disclose the Wiring Defect, Defendants intentionally concealed the Wiring Defect with the intent to mislead Plaintiffs Raiskin and Salvadore, and the Florida Subclass members, in order to sell additional Class Vehicles.

24

25

26

166.    Defendants knew, or should have known, that the Wiring Defect in the Class Vehicles could cause the Class Vehicles to spontaneously catch fire, putting vehicle operators and passengers at risk of injury or death.

27

28

167.     Had Plaintiffs Raiskin and Salvadore, and the Florida Subclass members, known about the Wiring Defect at the time of purchase, including the safety hazard posed by the Wiring Defect, they would not have bought the Class Vehicles or would have paid much less for them.

168.     As a direct and proximate result of Defendants' wrongful conduct in violation of the FDUTPA, Plaintiffs Raiskin and Salvadore, and the Florida Subclass members, have suffered and continue to suffer harm as a result of the Wiring Defect and/or actual damages in the amount of the cost to repair or replace their vehicles, and damages to be determined at trial.  Plaintiff Raiskin and Salvadore and Florida Subclass members have also suffered the ascertainable loss of the diminished value of their vehicles.

169.     As a result of Defendants' fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, Plaintiffs Raiskin and Salvadore, and the Florida Subclass, are entitled to actual damages, attorneys' fees and court costs, and all other relief the court deems just and proper.

### EIGHTH COUNT
**Violation Of California's Consumer Legal Remedies Act, California Business & Professions Code § 1770(a) *et seq.* ("CLRA")**

170.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

171.     Plaintiffs bring this claim on behalf of themselves and members of the Nationwide Class.  Plaintiff Musgrave also brings this claim on behalf of himself and members of the California Subclass.

172.     Defendants are each "persons" as defined by California Civil Code § 1761(c).

173.     Plaintiff Musgrave and the other Subclass Members are "consumers" within the meaning of California Civil Code § 1761(d).

174.     By failing to disclose and concealing the defective nature of the Class Vehicles from Plaintiff Musgrave and members of the California Subclass, Defendants violated California Civil Code § 1770(a), as they represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or

grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.  *See* Cal. Civ. Code §§ 1770(a)(5), (7) & (9).

175.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

176.    Defendants knew that the Class Vehicles suffered from the Wiring Defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

177.    Defendants were under a duty to Plaintiff Musgrave and members of the California Subclass to disclose the defective nature of the Class Vehicles because: a) Defendants were in a superior position to know the true state of facts about the Wiring Defect contained in the Class Vehicles; b) Plaintiff Musgrave and members of the California Subclass could not reasonably have been expected to learn or discover that their vehicles have a dangerous safety defect until after they purchased the Class Vehicles; and c) Defendants knew that Plaintiff Musgrave and members of the California Subclass could not reasonably have been expected to learn about or discover the Wiring Defect.

178.    By failing to disclose the Wiring Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

179.    The facts concealed or not disclosed by Defendants to Plaintiff Musgrave and members of the California Subclass are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.  Had Plaintiff Musgrave and members of the California Subclass known that the Class Vehicles were defective and suffered from the Wiring Defect, they would not have purchased the Class Vehicles or would have paid less for them.

180.    Plaintiff Musgrave and members of the California Subclass are reasonable consumers who do not expect that their vehicles will suffer from the Wiring Defect.  That is the reasonable and objective consumer expectation for vehicles.

181.    As a result of Defendants' misconduct, Plaintiff Musgrave and members of the California Subclass have been harmed and have suffered actual damages in that the Class Vehicles are defective and require repairs or replacement.

182.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff Musgrave and members of the California Subclass have suffered and will continue to suffer actual damages.

183.    By a letter dated November 12, 2018, and sent via certified mail, Plaintiff Musgrave provided the Kia and Hyundai Defendants with notice of its alleged violations of the CLRA pursuant to California Civil Code Section 1782(a) and demanded that Defendants rectify the problems associated with the behavior detailed above.  As of the filing of this Complaint, Defendants have failed to give notice to all affected consumers, as required by California Civil Code Section 1782.

184.    Accordingly, Plaintiff Musgrave and members of the California Subclass seek an order enjoining the acts and practices described above.

185.    Plaintiff Musgrave and members of the California Subclass additionally seek actual damages, restitution, statutory and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper under section 1780(a) of the CLRA pursuant to Civil Code Section 1782(d), due to Defendants' failure to rectify or agree to adequately rectify its violations as detailed above.

**NINTH COUNT**
**Violation Of California's Unfair Competition Law, California Business & Professions Code § 17200 ("UCL")**

186.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

187.    Plaintiffs bring this claim on behalf of themselves and members of the Nationwide Class.  Plaintiff Musgrave also brings this claim on behalf of himself and members of the California Subclass.

188.    California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

189.    Defendants knew that the Class Vehicles suffered from an inherent defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

190.    In failing to disclose the Wiring Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so, thereby engaging in a fraudulent business act or practice within the meaning of the UCL.

191.    Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles because: a) Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles, to wit that they suffered from the Wiring Defect; b) Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles; and c) Defendants actively concealed the defective nature of the Class Vehicles from Plaintiffs and Class Members at the time of sale and thereafter.

192.    The facts concealed or not disclosed by Defendants to Plaintiffs and Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendants' Class Vehicles, or to pay less for them.  Had Plaintiffs and Class Members known that the Class Vehicles suffered from the Wiring Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

193.    Defendants continued to conceal the defective nature of the Class Vehicles even after consumers began to report problems.  Indeed, Defendants continue to cover up and conceal the true nature of this systematic problem today.

194.    Defendants' omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of the UCL, in that Defendants' conduct was

injurious to consumers, offended public policy, and was unethical and unscrupulous.  Plaintiffs and Class Members also assert a violation of public policy arising from Defendants' withholding of material safety facts from consumers.  Defendants' violation of consumer protection and unfair competition laws resulted in harm to consumers.

195.    Defendants' omissions of material facts, as set forth herein, also constitute unlawful business acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

196.    Thus, by their conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

197.    Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, and were capable of deceiving a substantial portion of the purchasing public.

198.    As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

199.    Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and Class Members pursuant to sections 17203 and 17204 of the Business & Professions Code.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Class and Subclasses, and award the following relief:

A.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class and Subclasses, and Plaintiffs' counsel as counsel for the Class and Subclasses;

B.    An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.    Injunctive and equitable relief in the form of a comprehensive program to repair or replace the Wiring Defect in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all Class and Subclass members for all costs and economic losses;

D.     A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

E.     An order awarding costs, restitution, disgorgement, punitive damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss and out-of-pocket costs in an amount to be determined at trial;

F.     An order awarding any applicable statutory and civil penalties;

G.     A declaration that Defendants are required to engage in corrective advertising;

H.     An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I.     An award of costs, expenses and attorneys' fees as permitted by law; and

J.     Such other or further relief as the Court may deem appropriate, just, and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated:  December 3, 2018                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____ */s/ Joel D. Smith*_____
              Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Frederick J. Klorczyk III (State Bar No. 320783)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
          jsmith@bursor.com
          fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019

Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail:  scott@bursor.com

*Attorneys for Plaintiffs*

1

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

2

3

I, Joel D. Smith, declare as follows:

4

1.      I am an attorney at law licensed to practice in the State of California and a member

of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs in

5

this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a

6

witness, I could and would competently testify thereto under oath.

7

2.      The Complaint filed in this action is filed in the proper place for trial under

8

California Civil Code Section 1780(d) because Defendants do business in in this county and/or a

9

substantial portion of the transactions at issue occurred in this county.

10

I declare under the penalty of perjury under the laws of the State of California that the

11

foregoing is true and correct, executed on December 3, 2018 at San Francisco, California.

12

13

14

15

16

_____

17

Joel D. Smith

18

19

20

21

22

23

24

25

26

27

28